## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| DOUGLAS S. WATERBURY, | ) | 5:18-CV-440 (MAD/TWD) |
| CAROL A. WATERBURY, | ) | |
| E&A MANAGEMENT CO., and | ) | |
| ONTARIO REALTY, INCORPORATED, | ) | |
| Defendants. | ) | |

## CONSENT DECREE

### I.    INTRODUCTION

1.      This action was filed by the United States of America on April 11, 2018, to enforce Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), 42 U.S.C. §§ 3601-3631.  The United States alleges that Defendants Douglas S. Waterbury, Carol A. Waterbury, E&A Management Co., and Ontario Realty, Incorporated (collectively, "Defendants"), have engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, and denied to a group of persons rights granted by the Fair Housing Act that raise an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

2.      The United States alleges that, since approximately 1990 through the present, Defendant Douglas Waterbury has subjected female prospective and actual tenants of the Defendants' residential rental properties to discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual harassment, on multiple occasions.

3.      The United States alleges that all other named defendants are liable for the above-described discriminatory conduct of their partner, agent, co-manager, and co-owner, Douglas Waterbury.

4.      The United States alleges that the above-described actions and conduct of Defendant Douglas Waterbury caused female prospective and actual tenants to suffer physical harm, fear, anxiety, and emotional distress, and inhibited their ability to secure housing for themselves and their families.

5.      The United States alleges that by the actions and statements described above, the Defendants have:  denied dwellings or otherwise made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a); discriminated in the terms, conditions, or privileges of the rental or sale of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b); made statements with respect to the sale or rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); represented on the basis of sex that a dwelling was not available when such dwelling was in fact so available, in violation of 42 U.S.C. § 3604(d); discriminated in the terms and conditions of residential real estate-related transactions because of sex, in violation of 42 U.S.C. § 3605; and coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Sections 804 and 805 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

6.      The United States alleges that Defendants' conduct constitutes:  a pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42

U.S.C. §§ 3601, *et seq.*; and a denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, raising an issue of general public importance.

7.     The United States alleges that Defendant Douglas Waterbury's intentional discriminatory conduct injured female tenants and rental applicants and persons associated with them.  Such persons are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and have suffered damages as a result of Defendants' conduct.

8.     All parties have agreed that in order to avoid protracted and costly litigation, this action should be resolved without a trial and adjudication of the facts alleged by the United States.  Therefore, the parties consent to the entry of this Consent Decree.

9.     This Consent Decree shall not constitute an admission or acknowledgment of liability by Defendants or a determination by the Court on the merits of any claims asserted by the United States.

10.     This Consent Decree constitutes full resolution of all claims asserted against Defendants by the United States in this action

11.     The parties agree that this Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 42 U.S.C. § 3614(a).

**ACCORDINGLY, it is hereby ADJUDGED, ORDERED and DECREED:**

**II.     SCOPE AND TERM OF THE CONSENT DECREE**

12.     The provisions of this Consent Decree shall apply to Defendants, their officers, employees, agents, assigns, successors-in-interest, all persons or entities who engage in the residential rental property business with, or are in active concert or participation with, any of them, and any Manager retained pursuant to Paragraph 27 of this Consent Decree.

13.     This Consent Decree is effective immediately upon its entry by the Court.  For purposes of this Consent Decree, the phrases "effective date" and "date of this Consent Decree" shall refer to the date on which the Court enters this Consent Decree.

14.     Unless otherwise specified or extended pursuant to Paragraph 70, the provisions of this Consent Decree shall be in effect for a period of five (5) years from the date of this Consent Decree.  The Court shall retain jurisdiction for a period of five (5) years after the effective date, for the purpose of enforcing or interpreting the provisions of this Consent Decree, after which the case shall be dismissed with prejudice.

15.     As used in this Decree, the phrase "**Subject Properties**" refers to any rental dwelling in which any Defendant has any Property Management Responsibilities, or any direct or indirect ownership interest, financial interest, or control interest, or which is owned or operated by any entity of which any Defendant is an officer, agent, employee, or partner.  The terms "dwelling" and "rent" shall be defined as set forth in 42 U.S.C. § 3602.  A complete and current list of the Subject Properties is attached to this Decree as Appendix A.[1]

16.     Defendants represent that Douglas Waterbury is a part-owner of several properties, including three (3) properties located at:  (a) 131 South Ramona Beach Drive, Richland, New York; (b) 149 South Ramona Beach Drive, Richland, New York; and (c) 124 South Ramona Beach Drive, Richland, New York (collectively, the "Ramona Beach Properties").  So long as the conditions described in this paragraph remain true, and the requirements of this paragraph are met, the Ramona Beach Properties shall not be considered Subject Properties for the purposes of this Consent Decree.

---

[1] Defendants will provide a complete and accurate list to the United States of "Subject Properties" to be incorporated by reference herein and attached to this Decree as Appendix A.

a. Defendants represent that the Ramona Beach Properties are used exclusively as vacation properties for the private use of the Waterbury family and are not used as residential rental properties, except for occasional short-term vacation rentals of no more than one week's duration.  Defendants further represent that they are and (except as specified in this paragraph) will continue for the duration of this Decree to be, completely uninvolved in the rental of or any other Property Management Responsibilities relating to the Ramona Beach Properties.

b. Defendant Douglas Waterbury will not visit, or otherwise enter or access, any of the Ramona Beach Properties when it is being used as a rental property by anyone other than a Waterbury family member, and he will have no contact with persons, other than his family members, who apply for or rent the Ramona Beach Properties, for the duration of this Consent Decree.

c. If (1) any Defendant wishes to engage in Property Management Responsibilities relating to the Ramona Beach Properties identified within this paragraph; or (2) the Ramona Beach Properties are used as residential rental properties, beyond occasional short-term vacation rentals of no more than one week's duration; the Defendants must provide at least ten (10) days advance written notice to the United States.  Beginning on the date of that notice, the Ramona Beach Properties will be considered Subject Properties, subject to all relevant terms and conditions of this Consent Decree.

17.     As used in this Decree, the term "**Property Management Responsibilities**" includes: advertising dwelling units for rent; showing or renting housing units; processing rental applications; supervising or performing repairs or maintenance; negotiating rents and security

deposits; determining tenant eligibility for subsidies or waivers of fees and rent; determining whom to rent to, whom to evict, and/or whose lease to renew or not renew; inspecting dwelling units; collecting rent and fees; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, direct or indirect personal contact with tenants or prospective tenants; operating, consulting, managing, staffing, participating in, working in (whether paid or unpaid), or otherwise having any involvement in the management, or maintenance of rental dwellings, including but not limited to those owned and/or managed by any Defendant in this action.

### III.   GENERAL INJUNCTION

18.    Defendants, their officers, agents, employees, successors and assigns, and all other persons or entities in active concert or participation with them, are hereby enjoined from:

    a.  Refusing to rent a dwelling unit, refusing or failing to provide or offer information about a dwelling unit, or otherwise making unavailable or denying a dwelling unit to any person because of sex;

    b.  Discriminating against any person in the terms, conditions or privileges of renting a dwelling unit, or in the provision of services or facilities in connection therewith, because of sex;

    c.  Making, printing, publishing, or causing to be made, printed, or published any notice, statement, or advertisement with respect to the rental of a dwelling unit that states any preference, limitation, or discrimination based on sex; or

    d.  Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or

on account of her having aided and encouraged any other person in the exercise

or enjoyment of, any right granted by 42 U.S.C. §§ 3601-3631.

19.    Defendants shall not discriminate or retaliate against any person who exercises

rights protected under the Fair Housing Act or this Consent Decree.

### IV.  INJUNCTION CONCERNING DEFENDANT DOUGLAS WATERBURY

20.    Defendant Douglas Waterbury shall be permanently prohibited from purposefully

or knowingly engaging in contact or communications, either directly or indirectly, with: (a) any

current or past tenant of the Subject Properties; (b) any current or past tenant of any property in

which any Defendant had any Property Management Responsibilities or any ownership interest,

financial interest, or control interest at any time between January 1, 1980, through the term of

this Decree; or (c) any person who has inquired about or indicated an intention to reside in any of

the Subject Properties, including but not limited to any person identified as an aggrieved person

pursuant to Paragraph 46 below.  Defendant Douglas Waterbury shall refrain from initiating any

such contact.  If Defendant Douglas Waterbury is contacted by an individual that falls into one of

these categories, he shall immediately terminate such contact and inform the Manager, in

writing, of the contact.

21.    Defendant Douglas Waterbury is hereby permanently enjoined from directly or

indirectly engaging in or conducting any Property Management Responsibilities as defined in

this Decree, except to the extent that he communicates as necessary with any Manager retained

in accordance with this Decree.

22.    Defendant Douglas Waterbury is permanently enjoined from entering the

premises at any of the Subject Properties, including, but not limited to the dwelling units

(whether occupied or unoccupied), leasing offices, basements, communal spaces, yards, parking

areas, garages, and any rental dwelling for which he has or acquires any direct or indirect ownership interest, financial interest, or control interest.

23.     Defendant Carol Waterbury shall not purposefully or knowingly permit Defendant Douglas Waterbury to directly engage in or conduct any Property Management Responsibilities as defined in this Decree during the five (5) year term of this Consent Decree.

24.     No provision of this Consent Decree shall be construed to permit Defendant Douglas Waterbury to engage in any activities or conduct prohibited in Paragraphs 20-22.

25.     If Defendant Douglas Waterbury violates any of the provisions of this Consent Decree, the United States may seek any and all available remedies for those violations, including instituting a civil contempt proceeding.

## V.  REQUIREMENT TO RETAIN INDEPENDENT MANAGER

26.     Except as otherwise provided herein, Defendant Carol Waterbury shall not perform any Property Management Responsibilities at the Subject Properties.

27.     To the extent that the Defendants retain any direct or indirect ownership interest, financial interest, or control interest in any Subject Properties, those properties must be operated and managed by an independent management company or independent manager (hereinafter "**Manager**").  Defendants' Manager must be approved by the United States, in writing, in advance of hiring.  As used herein, an "independent" management company or manager may not be Douglas Waterbury or Carol Waterbury and refers to a professional property manager or a licensed real estate professional, to whom no Defendant has any financial, personal, or familial connection or interest.

28.     Within thirty (30) days of the entry of this Consent Decree, Defendants will notify the United States of their proposed Manager.  This notification shall include: (1) a statement of

any current or past connections or interests between the Manager and any Defendant, and (2) a statement from Defendants affirming that Defendants have provided the proposed Manager with this Consent Decree, and that the proposed Manager has reviewed this Consent Decree.

29.     The United States shall have the opportunity to object to the proposed Manager. Should the United States object to Defendants' retention of an otherwise qualified manager, it must provide Defendants, in writing, with an objective and reasonable basis for not approving Defendants' retention of the Manager.  Approval from the United States will not unreasonably be withheld.

30.     Once a Manager has been approved by the United States, the Manager shall be formally retained by Defendants within five (5) days.  Defendants Douglas Waterbury and Carol Waterbury agree to permit and facilitate the United States' counsel's ability to communicate directly with any prospective Manager contacted or identified by Defendants.

31.     Defendant Carol Waterbury shall retain the right to manage any Subject Property during the thirty (30)-day period set forth in Paragraph 28 of this Consent Decree.  To the extent that Defendant Carol Waterbury manages any Subject Property during the thirty (30)-day period, she shall ensure that all of Defendants' employees, agents, and contractors who will be performing any duties related to the Subject Properties have received and read a copy of, and are familiar with, the requirements of this Decree.

32.     Any Manager retained in accordance with Paragraph 27 shall:

    a.   Be responsible for all Property Management Responsibilities, including using the Manager's name and telephone number for all rental advertisements; the Defendants' contact information may not be used in any advertising.

b.  Implement, subject to the United States' approval, a written policy against

sexual harassment, including a formal complaint procedure, also to be approved

by the United States.  A copy of this policy and procedure shall be provided to

counsel for the United States within forty-five (45) days of appointment of the

Manager under this Consent Decree.  This policy will be subject to a written

approval by the United States in advance of its implementation.  Within fifteen

(15) days of the United States' approval, the Manager shall distribute a written

copy of the policy and procedure to all tenants.  The Manager will provide the

United States with documentation confirming that the Manager distributed the

policy and procedure to all tenants in accordance with this paragraph.

Thereafter, the policy and procedure will be distributed to all new tenants at the

time of lease signing.

c.  Post an "Equal Housing Opportunity" sign at the Subject Properties, and in any

rental office through which the properties are rented.  The sign shall indicate

that all units are available for rent on a nondiscriminatory basis.  An 11 inch by

14-inch poster that comports with 24 C.F.R. Part 110 will satisfy this

requirement.  Such poster shall be placed in a prominent, well-lit, and easily

readable location.  In Subject Properties that are available for rent, but do not

have a common area, Defendants may satisfy the requirements of this provision

by providing an 8 inch by 11-inch poster that comports with 24 C.F.R. Part 110

directly to tenant(s) of the properties and/or including an 8-inch x 11-inch poster

that comports with 24 C.F.R. Part 110 within the new tenant rental package

provided directly to tenant(s).  To the extent the Subject Properties are

advertised through an independent rental agency or broker, the Manager shall request that such independent rental agency or broker post the "Equal Housing Opportunity" sign.  The Manager shall also include an "Equal Housing Opportunity" logo on all print or online advertisements or postings for rental housing properties.

d.   Maintain all records kept in relation to the management of the Subject Properties, and allow counsel for the United States to inspect and copy all such records upon reasonable notice.

e.   Provide any information reasonably related to compliance with this Consent Decree that is requested in writing by counsel for the United States, including tenant or prospective tenant files, tenant or prospective tenant telephone numbers, fair housing complaints, sexual harassment complaints, all documents related to any such complaints, and advertisements.

33.    Notwithstanding the provisions of Paragraph 27 of this Consent Decree, Carol Waterbury is permitted to enter any Subject Property should there exist a time-sensitive emergency, such as a fire, plumbing, heating, or police emergency, and the Manager is unavailable to reach the property quickly enough to attend to the emergency.  Carol Waterbury will be required to document each occasion on which she enters and handles an emergency at a Subject Property, and said documentation will include: (a) the location and date on which the emergency took place; (b) the reason for the Manager's inability to arrive at the property in time to address the problem; (c) how long she was at the property; and (d) the full name and contact information, including telephone number, of anyone else who was present at the property.  Carol Waterbury is required to provide said documentation to counsel for the United States and to the

Manager, together with the certification required by Paragraph 40, within five (5) days of such emergency.

34.    Notwithstanding the provisions of Paragraph 27 of this Consent Decree, Defendant Carol Waterbury is permitted to enter and show to prospective tenants any Subject Property, subject to the approval of the Manager within the Manager's discretion, if there is a circumstance in which the Manager is unavailable to show the property to prospective tenants and the showing is time-sensitive.  Defendant Carol Waterbury will be required to document each occasion on which she enters and shows a Subject Property to prospective tenants, and said documentation will include: (a) the location and date on which the showing took place; (b) the reason for the Manager's inability to arrive at the property in time to show the property; (c) confirmation that she received the Manager's approval to show the property; (d) how long she was at the property; and (e) the full name and contact information, including telephone number, of anyone else who was present at the property during such showing.  Carol Waterbury is required to provide said documentation to counsel for the United States and to the Manager, together with the certification required by Paragraph 40, within five (5) days of such showing. Subject to the terms specified herein, during the first six (6) months following the effective date of this Consent Decree, Defendant Carol Waterbury is permitted to show Subject Properties to prospective tenants, as necessary, with the discretionary approval of the Manager.  Thereafter, for the remainder of time this Consent Decree remains in effect, under no circumstances may Defendant Carol Waterbury show Subject Properties to prospective tenants under this provision more than twelve (12) times in any twelve (12)-month period.

35.    Defendants shall not change or substitute the Manager during the term of this Consent Decree, except as set forth herein.  Before changing or substituting the Manager,

Defendants must provide to counsel for the United States a written Notice of Intent to Terminate the Manager ten (10) business days in advance of the Manager's actual date of termination. Defendants' Notice of Intent to Terminate must include Defendants' justification for the Manager's termination and the identity of a replacement Manager, if one has been identified.  If no replacement Manager is identified, Defendants shall have thirty (30) days from the date of sending the Notice of Intent to Terminate to identify and retain a replacement Manager.  Any subsequent Manager must be approved in accordance with the directives of Paragraphs 27-30 of this Consent Decree, and must comply with all the requirements for and responsibilities of the Manager as described in this Consent Decree.

36.      Counsel for the United States maintains the right to object to Defendants' decision to terminate the Manager or to any decision to terminate the Manager before a replacement Manager is identified.  Should the United States' counsel object to the Defendants' termination of the Manager or to any Manager being terminated before a replacement is identified, the United States' counsel is required to provide Defendant Carol Waterbury with written notice of its objection within ten (10) business days of its receipt of Defendants' Notice of Intent to Terminate.  The written notice is required to identify the specific factual basis for the United States' objection to terminate the Manager.  If there is any such written objection, the parties will simultaneously request a status hearing with the Court.

37.      Counsel for the United States is entitled to request written documentation from Defendants to ensure that Defendants' proposed or actual termination of the Manager is or was "for cause" or to evaluate whether the circumstance leading to the termination warrants that the Manager be discharged before a replacement is identified.  Cause is defined as a breach or

deviation from a material term of the Management Agreement between any Defendant and the Manager.

38.     If the Manager quits or notifies Defendants of an intention to resign, Defendants must provide counsel for the United States a written Notice of Manager Resignation within five (5) days of receiving such notice from the Manager.  Defendants shall have thirty (30) days from the date of sending the Notice of Manager Resignation to identify and retain a replacement Manager.  Any subsequent Manager must be approved in accordance with the directives of Paragraphs 27-30 of this Consent Decree, and must comply with all the requirements for and responsibilities of the Manager as described in this Consent Decree

39.     Defendant Carol Waterbury will be allowed to manage the Subject Properties for the thirty (30)-day period Defendants are permitted to locate and retain a new Manager, as set forth in Paragraphs 35 and 38 of this Consent Decree if: (a) there is no objection from the United States to Defendants' decision to terminate a Manager before a replacement is identified; (b) the Court agrees that Defendants can terminate the Manager before any replacement is identified; (c) the Court agrees that Carol Waterbury can manage the properties pending resolution of the objection concerning the termination of the Manager; or (d) Defendants have documented in their Notice of Intent to Terminate that there is a risk of substantial harm if they cannot immediately terminate the Manager.  Under no circumstances may Defendant Carol Waterbury serve as Manager for more than sixty (60) days in any twelve (12)-month period.

40.     Under no circumstances may Defendant Douglas Waterbury accompany Defendant Carol Waterbury when she is exercising the responsibilities set forth in Paragraphs 31, 33, 34, and 39.  Defendant Douglas Waterbury must remain one thousand (1,000) feet away from Defendant Carol Waterbury when she is:  (a) meeting or communicating with a prospective

tenant(s) or with anyone associated with a prospective tenant(s), in person, regardless of whether that meeting or communication occurs at a Subject Property or some other physical location; (b) showing a Subject Property to a prospective tenant(s) or to anyone associated with a prospective tenant(s); or (c) performing Property Management responsibilities at a Subject Property.  Within five (5) days of completing a period of property management as described in Paragraphs 31 and 39, and within five (5) days of entering a Subject Property as described in Paragraphs 33 and 34, Defendant Carol Waterbury shall provide a written notification to the United States certifying, under penalty of perjury, that Defendant Douglas Waterbury did not accompany her to any Subject Property and that he remained one thousand (1,000) feet away from Defendant Carol Waterbury when she performed any action specifically identified in this Paragraph.  In the event that Defendant Carol Waterbury becomes aware of any instance in which Defendant Douglas Waterbury has purposefully or knowingly not remained one thousand (1,000) feet away from Defendant Carol Waterbury as required by this Paragraph when she is engaging in property management responsibilities, Defendant Carol Waterbury shall, within five (5) days of learning of each such instance, provide a written notification to the United States setting forth the details of each instance.

41.     The parties agree to meet and confer one year after the effective date of this Consent Decree if Defendants wish to seek approval from the United States to expand the role of Defendant Carol Waterbury in property management under the terms of this Consent Decree.

**VI. COMPLIANCE TESTING**

42.     The United States may take steps to monitor the Defendants' compliance with this Consent Decree, including, but not limited to, conducting fair housing tests at any location(s) owned, operated, or managed by the Defendants or by the Manager retained under this Decree.

## VII. MONETARY DAMAGES FOR AGGRIEVED PERSONS

43.     Within ten (10) days of Defendants' receipt of funds from a lender, or by August 23, 2019, whichever is earlier, the Defendants shall deposit in an interest-bearing escrow account the total sum of **FOUR HUNDRED THOUSAND DOLLARS ($400,000)** for the sole purpose of compensating those persons whom the United States determines may have been harmed by the Defendants' discriminatory housing practices (hereinafter "Aggrieved Persons").  This money shall be referred to as "the Settlement Fund."  Within five (5) business days of the establishment of the Settlement Fund, the Defendants shall submit proof to the United States that the account has been established and the funds deposited.

44.     Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be utilized as set forth herein.

45.     The Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited pursuant to Paragraph 43, above.

46.     The United States shall investigate the claims of allegedly Aggrieved Persons and shall obtain sworn declarations from each Aggrieved Person setting forth the factual basis of the claim.  Within ninety (90) days of the date on which the Defendants deposit the funds required by Paragraph 43 of this Consent Decree, the United States shall inform Defendants as to its determination as to which persons are aggrieved and an appropriate amount of damages that should be paid to each such Aggrieved Person.  The Defendants agree that the determinations of the United States shall be final, and Defendants hereby waive the right to contest the United States' determination of who qualifies as an Aggrieved Person in this or any other proceeding. Defendants hereby agree that they will not seek to interfere with or oppose the United States'

determinations regarding the Aggrieved Persons and the appropriate amount of damages paid to each Aggrieved Person.

47.     To date, the United States has disclosed in discovery eleven (11) individuals that it is likely to identify as Aggrieved Persons, and it anticipates identifying additional Aggrieved Persons.  Therefore, the parties agree that the entire Settlement Fund will be distributed to Aggrieved Persons identified by the United States and the parties expect that there will be no monies remaining in the Settlement Fund after such distribution.

48.     In its letter informing the Defendants of its determination, the United States shall inform the Defendants of the amounts (plus accrued interest) that should be paid pursuant to its determination.  The Defendants shall, within ten (10) days of the receipt of the United States' determination, deliver to counsel for the United States, by overnight delivery[2]  in accordance with footnote 2, a separate check payable to each Aggrieved Person in the amounts recommended.

49.     In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund plus accrued interest.

50.     When counsel for the United States has received a check from the Defendants payable to an Aggrieved Person and a signed release in the form of Appendix B from the Aggrieved Person, counsel for the United States shall deliver the check to the Aggrieved Person and a copy of the signed release to counsel for the Defendants.  No Aggrieved Person shall be

---

[2] All documents, instruments, and written materials required by this Consent Decree to be sent to the United States shall be sent by commercial (not by United States Postal Service) overnight delivery service, addressed as follows:  Chief, Housing & Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 4 Constitution Square, 150 M St. NE, 8th Floor, Washington, D.C. 20002, Attn:  DJ 175-50-62.

paid until that person has executed and delivered to counsel for the United States the release at Appendix B.

51.     Upon distribution, the United States will specify the amounts distributed through a separate notice ("Disbursement Notice") publicly filed with the Court.  The Disbursement Notice will set forth the amounts to be received by each Aggrieved Person.  The Defendants shall not have any right to object to the disbursements identified in the Disbursement Notice.

52.     The compensation required to be paid pursuant to Paragraphs 43 above and 53 below are debts as defined in 11 U.S.C. § 523(a)(6).  The Defendants shall not seek to discharge any part of these debts in bankruptcy.  Notwithstanding the foregoing, nothing within this Consent Decree shall bar Defendants from filing bankruptcy once the Settlement Funds are fully distributed in accordance with Paragraphs 46-51 of this Consent Decree and the Civil Penalty is satisfied in accordance with Paragraph 54 of this decree.

53.     Pursuant to a separate Decree entered by this Court on June 21, 2019, in *CNY Fair Housing, et al. v. Waterbury, et al.*, No. 5:17-cv-868 (ECF No. 74), Defendants Douglas Waterbury, E&A Management Co., and Ontario Realty, Incorporated shall pay the total sum of **FOUR HUNDRED THOUSAND DOLLARS ($400,000)** in resolution of the claims asserted by the private plaintiffs in that action.

**VIII.  CIVIL PENALTY**

54.     Within ten (10) days of Defendants' receipt of funds from a lender, or by August 23, 2019, whichever is earlier, the Defendants shall pay Fifty Thousand Dollars ($50,000) to the United States as a civil penalty pursuant to 42 U.S.C. §3614(d)(1)(C).  This payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

55.    The civil penalty referenced in Paragraph 54 is a debt for a fine, penalty, or

forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C.

§ 523(a)(7) and is not compensation for actual pecuniary loss.  The Defendants shall not seek to

discharge any part of this debt in bankruptcy. Notwithstanding the foregoing, nothing within this

Consent Decree shall bar Defendants from filing bankruptcy once the Civil Penalty is satisfied in

accordance with Paragraph 54 of this decree and the Settlement Funds are fully distributed in

accordance with Paragraphs 46-51 of this Consent Decree.

### IX. RELATED ACTIONS

56.    The parties agree that this Consent Decree governs Carol Waterbury's

involvement in the management of the Subject Properties.  To the extent that any provision(s),

obligations, rights, or responsibilities set forth in the settlement agreement resolving *CNY Fair

Housing, et al.  v. Waterbury, et al*., No. 5:17-cv-868 (N.D.N.Y.), to which Carol Waterbury is

not a party, are inconsistent with any part this Consent Decree, this Consent Decree shall govern.

### X.  EDUCATION AND TRAINING

57.    Within ninety (90) days of the entry of this Consent Decree, Defendants Douglas

Waterbury and Carol Waterbury, and any person involved in performing Property Management

Responsibilities at any of the Subject Properties, and any employees or agents who supervise

such persons, including the Manager, shall undergo in-person training on the Fair Housing Act,

with specific emphasis on discrimination on the basis of sex and sexual harassment.  The trainer

or training entity shall be independent of the Defendants and of any Manager retained under this

Decree, qualified to conduct such training, and approved in advance in writing by the United

States.  Any expenses associated with this training shall be borne by Defendants.  At a minimum,

the training shall consist of instruction on the requirements of all applicable federal and state

housing discrimination laws, with an emphasis on sex discrimination and sexual harassment, and

a question and answer session for the purpose of reviewing the foregoing areas.  If the Manager,

or the Manager's agents or employees, have attended a training substantially similar to that

discussed herein within the six (6) months prior to the Manager's retention by Defendants, the

United States may decide, in its discretion, that such training satisfies the requirements of this

paragraph.  To seek approval for such prior training, Defendants or the Manager must provide

the United States with evidence documenting: (a) the date of the training; (b) the identity of the

trainer; (c) the content of the training; (d) the length of the training; and (e) the Manager's

attendance at the training.  The United States' approval of such training shall not unreasonably

be withheld.

58.    Defendants Douglas Waterbury and Carol Waterbury shall obtain from the trainer

certifications of attendance, executed by each individual who received training, confirming their

attendance.  These certifications shall include the name of the course, the name of the instructor,

the date the course was taken, and the length of the course and/or time within which the course

was completed.  Copies of such certifications shall be provided to counsel for the United States

within seven (7) days of completion of the training.

59.    During the term of this Consent Decree, within ninety (90) days of commencing

an employment or agency relationship, all new agents or employees of the Defendants or the

Manager involved in performing Property Management Responsibilities at the Subject

Properties, including any replacement Manager, and all employees or agents who supervise such

persons, shall undergo a training as described in Paragraph 57.  For each such person,

Defendants and/or the Manager shall obtain the certification of attendance described in

Paragraph 58 and provide the certification to counsel for the United States within seven (7) days

of completion of the training.  If such person has completed a training substantially similar to that described in Paragraph 57 within the six (6) months prior to commencing an employment or agency relationship with Defendants or the Manager, Defendants or the Manager may seek approval from the United States to exempt that person from the requirements of this paragraph as set forth in Paragraph 57.

## XI.   RECORD KEEPING

60.    During the effective period of this Consent Decree, the Defendants shall make good faith efforts to ensure that the Manager will preserve and maintain all records that are the source of, contain, or relate to any information pertinent to their obligations under the Consent Decree, including, but not limited to, the following:

a.  A list of all tenants, the units in which they live, and their telephone numbers;

b.  Rental applications and other information, recorded by any means, related to any inquiries regarding the availability of units;

c.  Rental records, including leases, maintenance orders, notices of non-renewal or eviction or wrongful occupation, tenant complaints, and correspondence with tenants;

d.  Rental policies and procedures, including the sexual harassment policy referred to in Paragraph 32(b);

e.  Tenant rules and regulations;

f.  Rental ledgers;

g.  Any documents related to notifications or complaints of contact or interference by Douglas Waterbury or anyone on his behalf, or discrimination, harassment, unfair treatment, or violation of this Decree by any Defendant; and

h.   Rental payments, including any abatements in rent, or other financial records.

61.   The Defendants and the Manager shall provide copies of the documents described in this Section and shall permit the United States to inspect and copy these documents upon reasonable notice.

### XII.   REPORTING REQUIREMENTS

62.   During the effective period of this Consent Decree, the Defendants shall, through the Manager, provide to the United States notification and documentation of the following events, no later than fifteen (15) days after their occurrence:

a.   Any notification that Douglas Waterbury has provided to the Manager pursuant to Paragraph 20 above;

b.   Any change in the rules or practices regarding the sexual harassment policy discussed in Paragraph 32(b), above;

c.   Any change in the list of Subject Properties, whether because a property has become a Subject Property pursuant to Paragraphs 16(c) or 66, or because a property ceases to be a Subject Property, pursuant to Paragraph 67;

d.   Any information indicating that any person or entity is or may be in violation of this Consent Decree; and

e.   Any complaint in the possession of the Manager, whether written, oral, or in any other form, against Defendants or their agents or employees, regarding contact or interference by any Defendant, or discrimination, harassment, unfair treatment, retaliation, or violation of this Decree by any Defendant.  The Manager shall promptly provide the United States all information it may request concerning any such complaint.  The Manager shall also inform the United

States, in writing, about the substance of any resolution of the complaint within

fifteen (15) days of such resolution.

63.     Beginning six (6) months after the effective date of this Decree, and every six (6)

months thereafter, the Manager shall deliver to counsel for the United States a report containing

the following information, except that the final report shall be submitted sixty (60) days prior to

the expiration of this Decree:

      a.   A list of current tenants at each Subject Property with a contact telephone

          number for each tenant;

      b.   A list of all applicants for each Subject Property during the reporting period

          with a contact telephone number for each;

      c.   Any documents required by any provision of this Consent Decree to the extent

          that these documents have not been previously provided; and

      d.   Written verification by the Manager that s/he has managed the Subject

          Properties in accordance with the terms of this Decree during the reporting

          period.

**XIII.   ACQUISITION OR TRANSFER OF INTEREST IN SUBJECT PROPERTIES**

64.     At any time while this Consent Decree remains in effect, all Defendants maintain

the right to acquire or dispose of an interest in a residential rental property.

65.     If, at any time while this Consent Decree remains in effect, any Defendant intends

to dispose of its interest in a residential rental property, Defendant Douglas Waterbury is

enjoined from negotiating directly with any potential purchaser(s) of the residential rental

property.  All negotiations and communications with the potential purchaser(s) of any

Defendant's interest in a residential rental property will be handled by the Manager or a licensed real estate broker.

66.     If, at any time while this Consent Decree remains in effect, any Defendant acquires a direct or indirect management, ownership, financial, or control interest in any other residential rental property, such property shall be considered a Subject Property and shall become subject to the applicable provisions of this Consent Decree.  Within thirty (30) days of acquiring such an interest, Defendants shall notify counsel for the United States of the nature of Defendants' interest in the dwelling or property; the address of the property; the number of individual dwelling units at the property; and all other information required under the Consent Decree.  Defendants shall further provide to the United States a copy of the documents memorializing the transfer in interest within thirty (30) days of acquiring such an interest.

67.     If at any time while this Consent Decree remains in effect, any Defendant maintains that its obligations under this Consent Decree have terminated or changed because it has sold or transferred one of the Subject Properties to a *bona fide* third party purchaser in an arms-length transaction,[3] the Defendants shall inform the United States within thirty (30) days of such transaction and provide the date of the sale or transfer, copies of the sale or transfer documents, and the name(s) and contact information for the subsequent purchaser.

---

[3] For purposes of this Consent Decree, "arms-length transaction" is defined as a transaction that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.  A transaction involving a corporate entity in which any Defendant, or any person related to any Defendant or by blood or marriage, is an officer, agent, employee, or partner, or has any ownership, financial, or control interest, shall not be considered an arms-length transaction.

68.     If any transfer of interest in all or a portion of one of the Subject Properties is not an arms-length transaction, Defendants shall remain jointly and severally liable, along with the purchaser or other transferee, for any violations of this Consent Decree for its duration.

69.      Regardless of any transfer of interest in all or part of the Subject Properties, Defendants shall remain liable for obligations under Sections IV, VII, and VIII of this Consent Decree.

## XIV.   MISCELLANEOUS TERMS

70.     Without further order of the Court, the parties may mutually agree, in writing, to reasonable extensions of time to carry out any provisions of the Consent Decree.  In addition, any party may move the Court to extend the terms of this Consent Decree for good cause.

71.     The parties to this Consent Decree shall endeavor in good faith to resolve informally any differences regarding the interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. If the United States has a good faith basis to believe that there has been a failure by any Defendant to perform in a timely manner any act required by this Consent Decree, or otherwise to act in conformance with any provision thereof, whether intentionally or not, the United States will notify Defendants' attorney of record in writing of its concerns, and the parties will attempt to resolve those concerns in good faith, including by providing Defendants with a reasonable opportunity to cure.  However, in the event of a failure by Defendants, whether willful or otherwise, to perform in a timely manner any act required by this Consent Decree or in the event of any other act violating any provision hereof, any party may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts

and an award of any damages, costs, and attorneys' fees which may have been occasioned by non-actions or actions.

72.     Failure of a party to insist upon strict performance of any provision of this Consent Decree shall not be deemed a waiver of the party's rights or remedies or a waiver by the party of any default by another party in performance or compliance with any terms of this Consent Decree.

73.     This Consent Decree may be signed by the parties in several counterparts, each of which shall serve as an original as against any party who signed it, and all of which taken together shall constitute one and the same document.

74.     Each signatory hereto warrants that he or she is competent and possesses the full and complete authority to covenant to this Consent Decree on behalf of himself, herself, or the party that he or she represents.

75.     The parties agree that, as of the effective date of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint.  To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, they are no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves any of the parties of any other obligations imposed by this Consent Decree.

76.     The United States and the Defendants will bear their own costs and attorneys' fees associated with this litigation.

**The undersigned apply for and consent to the entry of this Consent Decree:**

Dated:   August 8, 2019

**FOR THE PLAINTIFF THE UNITED STATES:**

GRANT C. JAQUITH
United States Attorney
Northern District of New York

_____*s/John D. Hoggan, Jr.*_____
JOHN D. HOGGAN, JR.
Assistant United States Attorney
Bar Roll No. 511254
United States Attorney's Office
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Phone: (518) 431-0247
Fax: (518) 431-0386
Email: John.Hoggan@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General

_____*s/Sameena Shina Majeed*__
SAMEENA SHINA MAJEED
Chief

_____*s/Lori K. Wagner*_____
R. TAMAR HAGLER
Deputy Chief
LORI K. WAGNER
ELIZA H. SIMON
KATHERINE A. RAIMONDO
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Phone: (202) 305-3107
Fax: (202) 514-1116
Email: Lori.Wagner@usdoj.gov


Attorneys for Plaintiff
United States of America

Dated:        August 8, 2019

**FOR DEFENDANTS:**

Shannon T. O'Connor (517122)
John P. Coghlan (519328)
Goldberg Segalla LLP
5786 Widewaters Parkway
Syracuse, New York 13214
(315) 413-5400
soconnor@goldbergsegalla.com
jcoghlan@goldbergsegalla.com

Defendant Douglas S. Waterbury

Defendant Carol A. Waterbury

Defendant E&A Management Co.

Defendant Ontario Realty, Incorporated

IT IS SO ORDERED this 9th day of August, 2019.

Mae A. D'Agostino
U.S. District Judge

**IT IS SO ORDERED** this _____ day of _____, 2019.

_____
UNITED STATES DISTRICT JUDGE

## Appendix A[4]

1.    24 West Main Street
Morrisville, New York 13408

2.    166 West Bridge Street
Oswego, New York 13126

3.    174 West Seneca Street
Oswego, New York 13126

4.    137 East Second Street
Oswego, New York 13126

5.    146 East Second Street
Oswego, New York 13126

6.    123-125 West Bridge Street
Oswego, New York 13126

7.    174 West Third Street
Oswego, New York 13126

8.    129 West Fourth Street
Oswego, New York 13126

9.    131 West Fourth Street
Oswego, New York 13126

10.    56 West Bridge Street
Oswego, New York 13126

11.    58-60 West Bridge Street
Oswego, New York 13126

---

[4] The properties listed in this Appendix are a subset of the real properties owned or operated by Defendants. Defendants have confirmed that the additional real properties that they own or otherwise have interests in, which are not listed in this Appendix, are: vacant lands; properties used exclusively for storage; properties used exclusively as personal or vacation residences by the Waterbury family; or properties used exclusively for commercial, non-residential purposes. The parties intend that all real property owned or operated by any Defendant as residential rental property be included in this Appendix.

12.     71 West Utica Street
        Oswego, New York 13126

13.     176 West Fifth Street
        Oswego, New York 13126

14.     163 East Third Street
        Oswego, New York 13126

15.     163 West Bridge Street
        Oswego, New York 13126

16.     29 NW Ninth Street
        Oswego, New York 13126

17.     255 West Fifth Street
        Oswego, New York 13126

18.     55 East Main Street
        Morrisville, New York 13480

19.     4256 St Rt 104
        New Haven, New York

20.     76 West Mohawk Street*
        Oswego, New York 13126

21.     120 Liberty Street*
        Oswego, New York 13126

*Defendants have represented that they do not directly or indirectly rent, manage, or control 76 West Mohawk Street, Oswego, N.Y., or 120 Liberty Street, Oswego, N.Y., both of which they purport to have sold in arms-length transactions pursuant to land contracts.  The Defendants have further represented that these two properties are managed by an independent manager with whom no Defendant has any financial, personal, or familial connection or interest.  If the Defendants provide counsel for the United States with verification of the above representations, as well as copies of the land contracts, these two properties will not be considered Subject Properties under this Consent Decree.  In the event that Defendants do not provide verification of their representations and copies of the land contracts, or if any Defendant subsequently acquires a direct or indirect management, financial, or control interest in either of these properties, or acquires any ownership interest other than as mortgage holder, such property shall be considered a Subject Property and shall become subject to the applicable provisions of this Consent Decree.

## Appendix B

## FULL AND FINAL RELEASE OF CLAIMS

In consideration for the parties' agreement to the terms of the Consent Decree they entered into in the case of <u>United States v. Douglas Waterbury, et al.</u>, 5:18-cv-440 (N.D.N.Y.), as approved by the United States District Court for the  Northern District of New York, and in consideration for the payment of $\$$_____, I, _____, do hereby fully release and forever discharge the Defendants named in this lawsuit, as well as their insurers, attorneys, agents, employees, former employees, heirs, and executors from any and all fair housing claims set forth, or which could have been set forth, in the Complaint in this lawsuit that I may have had against any of them for any of Douglas Waterbury's actions or statements related to those claims through the date of the entry of the Consent Decree.

Executed this \_\_\_\_\_ day of _____, 20\_\_\_\_.

_____
Signature

_____
Print Name

_____
Home Address

_____
Home Address Continued