UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                      Plaintiffs,

                                         Case No.: 5:18-cv-440 (MAD)(TWD)

- vs -


DOUGLAS WATERBURY,
CAROL A. WATERBURY,
E&A MANAGEMENT CO., and
ONTARIO REALTY, INCORPORATED,

                      Defendants.


## DEFENDANTS DOUGLAS WATERBURY, CAROL A. WATERBURY, E&A MANAGEMENT CO., AND ONTARIO REALTY, INCORPORATED'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE CONSENT DECREE AND FOR SANCTIONS


**GOLDBERG SEGALLA, LLP**

John P. Coghlan, Esq.
Bar Roll #519328
*Attorneys for Defendants*
5786 Widewaters Parkway
Syracuse, New York 13202
Telephone: 315-413-5400
Fax: 315-413-5401
Email: jcoghlan@goldbergsegalla.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………... ii

PRELIMINARY STATEMENT…………………………………………………………… 1

PROCEDURAL AND FACTUAL BACKGROUND…………………………………... 2

PLAINTIFF'S MOTION………………………………………………………………… 11

ARGUMENT…………………………………………………………………………….. 14

I.      DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT……………….. 14

        A.      PLAINTIFF FAILS TO SATISFY ITS BURDEN TO SHOW
                THAT DOUGLAS WATERBURY ENTERED THE PREMISES
                OF THE SUBJECT PROPERTY……………………………………………… 15

        B.      DEFENDANTS HAVE CURED TO THE BEST OF THEIR ABILITY
                ANY ALLEGED VIOLATIONS OF THE CONSENT DECREE……………. 17

II.     THE COURT SHOULD NOT SANCTION OR FURTHER
        ENJOIN DEFENDANTS…………………………………………………………… 19

CONCLUSION…………………………………………………………………………… 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brown v. Kelly*, 2007 U.S. Dist. LEXIS 39527 (S.D.N.Y. 2007) .................................................. 17

*Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987)................................. 19

*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911) ....................................................... 19

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ...................................................... 15

*King v. Allied Vision, Ltd.*, 65 F.3d 1051 (2d Cir. 1995).............................................................. 14

*Latino Officers Ass'n City of New York, Inc. v. City of New York*,

558 F.3d 159 (2d Cir. 2009)............................................................................................ 14, 15, 17

*Levin v. Tiber Holding Corp.*, 277 F.3d 243 (2d Cir. 2002)......................................................... 15

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989)...................... 19

*New York Times Co. v. Newspaper and Mail Deliverers' Union of New York and Vicinity*,

1992 U.S. Dist. LEXIS 6738 (S.D.N.Y. 1992) ........................................................................ 17

*People v. Operation Rescue Nat'l*, 80 F.3d 64 (2d Cir. 1996) ...................................................... 19

*Perez v. Danbury Hosp.*, 347 F.3d 419 (2d Cir. 2003) ................................................................. 15

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53 (2d Cir. 1982)................................. 19

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) .......................................... 19

*Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, 2019 U.S. Dist. LEXIS 59786 (S.D.N.Y.

2019) ........................................................................................................................................ 15

*Weston Capital Advisors, Inc. v. PT Bank Mutiara, TBK*, 738 Fed. Appx. 19 (2d Cir. 2018)..... 19

## PRELIMINARY STATEMENT

Defendants Douglas Waterbury, Carol Waterbury, E&A Management Co., and Ontario Realty Co. (hereinafter collectively "Defendants") respectfully submit this Memorandum of Law in opposition to the United States of America's (hereinafter "Plaintiff") Motion which seeks an Order compelling Defendants' Compliance with the Consent Decree that governs this matter, and also seeks sanctions in the form of monetary penalties for Defendants' alleged violations of the Consent Decree.

Plaintiff's motion papers allege that Defendants have engaged in persistent violations of the Consent Decree, and have refused to remedy these violations. The record, however, shows that Defendants have attempted to cure any deficiencies or alleged violations that have been brought to their attention. Moreover, although Plaintiff's assert that the Independent Manager, Lake Ontario Property Manager ("LOPM"), is hindered by Defendants' alleged violations of the Consent Decree, Defendants' submissions show that LOPM has failed to meet its obligations under the Management Agreement between the parties. LOPM's non-performance of its obligations under the Management Agreement entered into between Defendants and LOPM has left Defendants in a precarious financial situation that has led Defendants to the decision to list and sell the majority of the properties covered by the Consent Decree.

Moreover, Plaintiff continually states that Defendants have failed to provide LOPM with information and materials that are necessary to permit LOPM to manage the subject properties. However, Plaintiff's own papers show that Defendants have provided a litany of documents and materials in response to Plaintiff's requests.  Moreover, as it pertains to the Morrisville property, LOPM states that Defendants have not turned over all lease agreements or a complete financial accounting to assume control of the properties. Yet, as the Court will see, although Defendants

have provided all documents they are aware of concerning the property, and Defendants' attorneys have asked LOPM to identify what materials it believes remain outstanding, LOPM has never responded to that request. As Defendants have provided all materials they are in possession and aware of concerning the Morrisville property, and LOPM has chosen not to identify what materials it believe it requires, Defendants are alleged to have violated the Consent Decree, yet have not been provided with an opportunity to cure this issue.

Finally, throughout the history of this matter, Plaintiff has repeatedly stated that they have received numerous complaints of Defendant Douglas Waterbury violating the Consent Decree by entering the subject properties. However, in support of these allegations, Plaintiff have offered the statement of a tenant at one property, a video, and multiple hearsay statements provided by Rebecca Carswell. Defendant Waterbury has declared, under penalty of perjury, that he has not entered the premises of the subject properties. Further, although Plaintiff notes it is in receipt of numerous complaints and allegations, they have not offered any evidence substantiating those complaints, in spite of this Court's specific directive to do so.

Defendants have made every attempt to comply with their obligations under the Consent Decree and timely attempted to cure any purported violations when brought to their attention. Accordingly, Defendants respectfully request that this Court deny Plaintiff's motion, in its entirety.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff initiated this action on or about April 11, 2018, when it filed a Complaint in the United States District Court, Northern District of New York.  (Dkt. No. 1).  Plaintiff alleged Defendants violated Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act), 42 U.S.C. §§ 3601-3631 by engaging in a pattern or practice of resistance to the full enjoyment of rights

granted by the Fair Housing Act.  Defendants answered on or about June 11, 2018, thereby joining the matter.  (Dkt. Nos. 14-15).

Beginning in August 2018, and continuing through the summer of 2019, the parties endeavored to settle this matter.  (*See* Dkt. Nos. 24, 31, 46, 49, 51, 53, 55, and 57).  On August 8, 2019, the parties filed a proposed Consent Decree for District Court Judge Mae A. D'Agostino's review.  On August 9, 2019, Judge D'Agostino executed the Consent Decree, thereby fully resolving the matter.  (*See* Dkt. Nos. 61 and 63).

In pertinent part, the Consent Decree obligated the following:

15.    As used in this Decree, the phrase "Subject Properties" refers to any rental dwelling in which any Defendant has any Property Management Responsibilities, or any direct or indirect ownership interest, financial interest, or control interest, or which is owned or operated by any entity of which any Defendant is an officer, agent, employee, or partner.  The terms "dwelling" and "rent" shall be defined as set forth in 42 U.S.C. § 3602.  A complete and current list of the Subject Properties is attached to this Decree as Exhibit A.

. . .

17.    As used in this Decree, the term "Property Management Responsibilities" includes advertising dwelling units for rent; showing or renting housing units; processing rental applications; supervising or performing repairs or maintenance; negotiating rents and security deposits; determining tenant eligibility for subsidies or waivers of fees and rent; determining whom to rent to, whom to evict, and/or whose lease to renew or not renew; inspecting dwelling units; collecting rent and fees; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, direct or indirect personal contact with tenants or prospective tenants; operating, consulting, managing, staffing, participating in, working in (whether paid or unpaid), or otherwise having any involvement in the management, or maintenance of rental dwellings, including but not limited to those owned and/or managed any Defendant in this action.

. . .

20.    Defendant Douglas Waterbury shall be permanently prohibited from purposefully or knowingly engaging in contact or communications, either directly or indirectly, with: (a) any current or past tenant of the Subject Premises; (b) any current or past tenant of any property in which any Defendant had any Property

Management Responsibilities[]; or (c) any person who has inquired about or indicated an intention to reside in any of the Subject Properties[.]

21.     Defendant Douglas Waterbury is hereby permanently enjoined from directly or indirectly engaging in or conducting any Property Management Responsibilities as defined in this Decree, except to the extent that he communicates as necessary with any Manager retained in accordance with this Decree.

22.     Defendant Douglas Waterbury is permanently enjoined from entering the premises at any of the Subject Properties[.]

. . .

27.     To the extent that the Defendants retain any direct or indirect ownership interest, financial interest, or control interest in any Subject Properties, those properties must be operated and managed by an independent management company or manager.  Defendants' Manager must be approved by the United States, in writing, in advance of hiring[.]

. . .

33.     Notwithstanding the provisions of Paragraph 27 of this Consent Decree, Carol Waterbury is permitted to enter any Subject Property should there exists a time-sensitive emergency, such as a fire, plumbing, heating or police emergency, and the Manager is unavailable to reach the property quickly enough to attend the emergency[.]

34.     Notwithstanding the provision of Paragraph 27 of this Consent Decree, Defendant Carol Waterbury is permitted to enter and show to prospective tenants any Subject Property, subject to the approval of the Manager within the Manager's discretion, if there if is a circumstance in which the Manger is unavailable to show the property to prospective tenants and the showing is time sensitive . . . Subject to the terms specified herein, during the first six (6) months following the effective date of this Consent Decree, Defendant Carol Waterbury is permitted to show Subject Properties to prospective tenants, as necessary, with the discretionary approval of the Manager.  Thereafter for the remainder of time this Consent Decree remains in effect, under no circumstances may Defendant Carol Waterbury show Subject Properties to prospective tenants under this provision more than twelve (12) times in any twelve (12)-month period[.]

…

71.     If [Plaintiff] has a good faith basis to believe that there has been a failure by any Defendant to perform . . . the parties will attempt to resolve those concerns in

good faith, including by providing Defendants with a reasonable opportunity to cure. (Dkt. No. 63).

On August 23, 2019, Defendants wired complete payment to relevant parties pursuant to the terms of the Consent Decree. Thereafter, Defendants endeavored to locate an Independent Manager in accordance with their obligations under the Consent Decree. In September 2019, Defendants proposed an individual to serve as Independent Manager, but Plaintiff ultimately rejected the candidate. Defendants then continued to attempt to retain an Independent Manager. On October 14, 2019, Defense counsel provided Plaintiff with an additional log reflecting Defendants' efforts to locate an independent management company in compliance with the Consent Decrees. (*See* Pltf. Ex. 2; Dkt. No. 70-10). Additionally, Defendants proposed retaining Lake Ontario Property Management ("LOPM") as their Independent Manager.

Plaintiff approved the retention of LOPM on or about November 6, 2019, pending approval of the Management Agreement between the parties. (Declaration of John P. Coghlan, Ex. A). The Management Agreement was approved on or about December 23, 2019. (Coghlan Declaration, Ex. B). Prior to Plaintiff approving LOPM as the Independent Manager, LOPM proposed potential fee structures to Defendants. (Declaration of Douglas Waterbury, Ex. 1). Defendants accepted one of these proposals and incorporated that language into the draft Management Agreement. (*Id.*, ¶ 14). Once the Management Agreement was approved, however, LOPM unilaterally altered the fee structure it had originally proposed to a larger fee. Defendants then attempted to resolve this issue in light of previously accepting LOPM's proposal, but LOPM refused to serve as the Independent Manager unless Defendants accepted the increased fee structure. (*Id.*, ¶¶ 21-26). The parties orally agreed to LOPM's increased fee structure on or about March 3, 2020. (*Id.*, ¶ 27).

On or about March 20, 2020, the Management Agreement was fully executed by all parties. (Declaration of Carol Waterbury, Ex. 1). During this time, COVID-19 began to impact the United

States and LOPM ultimately advised Defendants they were unable to meet in person or show rental units in person at that time.

On April 20, 2020, Assistant United States Attorney, Lori Wagner, wrote to Defense counsel to advise that Defendants had not provided the documents necessary to permit the property manager to assume the responsibilities of property manager. Namely, Ms. Wagner identified that Defendants had not provided signed leases, prospective tenants list, compensation to manager, cooperation regarding advertisements, and day-to-day control of the properties. That same day, Defense counsel responded via email to Attorney Wagner stating:

> We are in receipt of your letter. Our client has made several productions of materials to the management group to facilitate the transfer. As you are aware the COVID-19 outbreak has complicated this process to a certain degree, including limiting the groups ability to access the properties.
>
> The Waterburys and the management group are scheduled to meet tomorrow to ensure compliance. (Coghlan Declaration, Ex. F).

On April 21, 2020, Defense counsel further updated Attorney Wagner:

> The management group and the Waterburys had a Zoom conference today. I previously forwarded the management group the current leases and listing of current tenants that was provided to you a few weeks ago. Carol Waterbury subsequently provided additional information concerning tenants that will be moving into units in May. It is my understanding the management group has received any additional materials they felt necessary and fully assumed management of the properties. The Waterburys will be dropping of a check with the required fee to the management group today. (Coghlan Declaration, Ex. G).

Defendants participated in several meetings with LOPM to facilitate LOPM assuming control of the subject properties. During this time Defendant Carol Waterbury did perform certain management responsibilities, which was done with the knowledge and consent of LOPM. (*See generally* Declaration of Carol Waterbury).

On June 25, 2020, Attorney Wagner wrote to defense counsel identifying five apparent violations of the Consent Decree by Defendants and requested that "your clients provide by June

30, 2020, a log of their management activity to include all activities regarding the Subject Properties that they have not previously disclosed[.]" (*See* Pltf Ex. 4; Dkt. No. 70-12).

On June 30, 2020, Defense counsel wrote to Attorney Wagner advising that "our clients have confirmed, that they will not have any involvement with the subject properties." (Coghlan Declaration, Ex. H). More specifically, Defendant Douglas Waterbury advised Defense counsel that he had not entered any of the subject properties nor performed property management responsibilities. Further, Defendants admitted that the phone number for the Morrisville apartments was a clerical oversight that was corrected. Defendants provided a calendar of Carol Waterbury's involvement with the subject properties. Further, Defendants advised that despite being advised to pay and communicate with the property manager, some tenants have communicated with Defendants and continued to pay Defendants directly. It must be noted that some tenants informed Defendants in those communications that the property manager was not returning their call. The property manager has even requested Carol to intervene with some maintenance work due to the COVID-19 pandemic. Defense counsel concluded by stating, "[w]e believe this cures any compliance issues raised in your June 25, 2020 correspondence. As indicated, I am also providing calendars and bank statements as requested in that correspondence to address your remaining concerns." (*Id.*).

On July 14, 2020, Defendants' served on Attorney Wagner a Notice of Intent to Terminate. Defendants requested authority to retain Romano Property Management. Defendants sought to terminate Lake Ontario Property Management because Defendants had been misled regarding who would be involved in the day-to-day management on the subject properties. Additionally, it was Defendants understanding and belief that Lake Ontario "has not responded to rental inquiries, failed to properly qualify prospective tenants, and failed to respond, or timely respond, to tenant

concerns, which qualify as material breaches of the Management Agreement." (*See* Wagner Ex. 5; Dkt. No. 70-13).

On July 28, 2020, Attorney Wagner served a letter on Defense counsel denying request to terminate LOPM as the Independent Manager and requesting written documentation evidencing that LOPM had failed to manage the Subject Premises. (See Wager Ex. 6; Dkt. No. 70-14). Also on July 28, 2020, Attorney Wagner sent Defense counsel a letter outlining Defendants' alleged violations of the Consent Decree. (See Wagner Ex. 10; Dkt. No. 70-18).

On July 30, 2020, Defense counsel responded to Attorney Wagner's July 28, 2020 letter. (*See* Wagner Ex. 12; Dkt. No. 70-20). Defense counsel noted that Defendants provided LOPM with all outstanding security deposits and that any rental monies previously collected were accounted for by LOPM. Further, Defense counsel had to coordinate transfer of maintenance of the Morrisville property to LOPM as LOPM has previously failed to effectuate the transfer on their own. Defense counsel also attached relevant bank statements and Lease Agreements as requested. Defense counsel noted that "Douglas Waterbury holds an indirect 1% interest in the Morrisville properties. I am not aware of any allegations in this matter that pertain to the Morrisville properties, nor do I believe that any of aggrieved parties that received payments had claims that were associated with the Morrisville properties." Defendants thereafter took steps to facilitate the transfer of the Morrisville property.

On August 6, 2020, Defendants served a supplemental Notice of Intent to Terminate. (*See* Wagner Ex. 14; Dkt. No. 70-22). Defendants notified Attorney Wagner that "Defendants have requested information and materials from LOPM related to their management of the properties, and although LOPM is required under the Management Agreement to maintain the requested materials and information, as well as have some communication with Defendants, LOPM has

failed to provide those materials and information at this time." Further, "Section 2.1 of the Management Agreement also requires LOPM to contemporaneously document, in writing, any and all inquiries for leasing and also requires LOPM to respond to an inquiry within one hour of receipt … LOPM has refused to provide that information to Defendants." As to LOPM's gross negligence, Defense counsel noted that "LOPM rented one apartment in the first five months after Management Agreement was executed . . . [i]t appears that tens of thousands of dollars have not been collected, and LOPM has failed to undertake the necessary efforts to collect that rent from current tenants." The foregoing is relevant to the present motion as "LOPM's failure to actually manage these properties resulted in numerous tenants becoming upset and attempting to contact Ms. Waterbury to obtain some sort of resolution." As to the Morrisville property, even prior to execution of the Consent Decree, a third party managed the property and as of the beginning of August 2020, Defendants turned over management to LOPM.

Thereafter, Defense counsel provided LOPM's attorney with additional documents, and two checks that contained rental monies and security deposits that had been in the possession of third-party Stacey Romano. Defense counsel also provided LOPM with a financial statement detailing Ms. Romano's involvement with the Morrisville property. After this production, LOPM did not advise Defendants, or Defense counsel, that they believed they were missing any additional documents or information concerning Morrisville.

Plaintiff subsequently advised Defense counsel that LOPM did not believe it was in possession of all documents and materials concerning the Morrisville property. Defense counsel requested that LOPM's attorney speak with his client to identify what documents LOPM believe it was missing, but, to date, LOPM has never identified this information. (Coghlan Declaration, Ex. I; Coghlan Declaration, ¶¶ 4-5).

On September 14, 2020, Assistant United States Attorney John D. Hoggan filed a letter with the Court requesting a pre-motion conference in the above-referenced matter.  (*See* Dkt. No. 65).  Namely, Attorney Hoggan requested permission to make a motion to enforce the Consent Decree.

On September 29, 2020, this Court held a pre-motion conference.  On October 1, 2020, the Court ordered Plaintiff to provide Defendants with detailed specifics as to their non-compliance with the Consent Decree.  Defendants were then to fully comply with every incident of non-compliance.  On October 6, 2020, Plaintiff provided notice to Defendants regarding their alleged non-compliance.  Specifically, Plaintiff identified 5 alleged violations and requested additional information regarding those violations.  (*See* Wagner Ex. 16; Dkt. No. 70-24).

On October 30, 2020, in compliance with this Court's order and Plaintiff's letter, Defense counsel presented the documents requested demonstrating their compliance with the Consent Decree.  (*See* Pltf Ex. 7; Dkt. No. 70-15).  Defense counsel further noted that Defendants provided LOPM with all leases, that the keys to all properties had been given to – or were available to – LOPM, all security deposits and rental monies have been tendered to LOPM, that Romano turned over all rental monies and security deposits that were in their possession, and advised that Defendants agreed to withdraw their request to substitute Romano as Independent Manager.

On November 9, 2020, Magistrate Judge Dancks held a telephone conference with counsel of record and granted Plaintiff's request to file a motion to compel compliance with the Consent Decree on or before December 4, 2020.  (*See* Dkt. No. 69). During the telephone conference, the Court directed Plaintiff to provide admissible evidence to support all of Defendants' alleged violations of the Consent Decree. Thereafter, Plaintiff filed the instant motion on December 4, 2020. (Dkt. No. 70).

## PLAINTIFF'S MOTION

Plaintiff asserts that Defendants violated the following eight provisions of the Consent

Decree:

- Decree ¶ 18(d), enjoining Defendants from engaging in intimidating, threatening, or interfering conduct;
- Decree ¶ 20, enjoining Defendant Douglas Waterbury from engaging in contact or communications with current of past tenants;
- Decree ¶ 21, enjoining Defendants from directly or indirectly engaging in or conducting any Property Management Responsibilities;
- Decree ¶ 22, enjoining Defendant Douglas Waterbury from entering any of the Subject Properties;
- Decree ¶ 26, enjoining Defendant Carol Waterbury from performing any Property Management Responsibilities at the Subject Properties, expect limited circumstances specifically provided by the Decree;
- Decree ¶ 27, requiring Defendants to hire an Independent Manager that is approved in advance by the United States;
- Decree ¶ 32(a), entrusting the Independent Manager with all Property Management Responsibilities; and
- Decree ¶ 40, prohibiting Defendant Douglas Waterbury from accompanying Carol Waterbury when she is exercising Property Management Responsibilities and requiring Carol Waterbury to provide written notification of within five days of learning of any such incident.

In sum and substance, Plaintiff's motion to enforce the Consent Decree can be whittled

down to four alleged categories of violations.  Plaintiff fails to prove each alleged violation by

clear and convincing evidence.

First, Plaintiff alleges that the Defendants did not retain an Independent Manager until

March 3, 2020 despite the Decree ordering it to be done by the fall of 2019.  (*See* Pltf Memo of

Law, p. 3-4; Dkt. No. 70-1, p.6-7.)  Plaintiff details that the first proposed Independent Manager

was denied by Plaintiff and that after LOPM was approved in November 2019, the property

management agreement was not executed until March 2020.

Second, Plaintiff alleges that the Defendants employed an unapproved Independent

Manager at the Morrisville Property and themselves engaged in Property Management

Responsibilities. (*See* Pltf Memo of Law, p. 5; Dkt. No. 70-1, p. 7.)  Plaintiff asserts that Defendants' phone numbers remained on websites and advertisements of the Morrisville property, Defendants' retained Romano Property Management to operate the Morrisville property without permission from Plaintiff, Defendants' directly coordinated maintenance work at the Morrisville property, and Defendants failed to timely turn over leases, keys, financial records, and other information related to the Morrisville property to LOPM.  (*See* Pltf Memo of Law, p. 7-9; Dkt. No. 70-1, p. 9-11.)

Third, Plaintiff alleges that Defendants have engaged in Property Management Responsibilities, failed to turn over keys, leases, money, and information to LOPM, and engaged in other prohibited conduct at the Subject Properties in Oswego.  (*See* Pltf Memo of Law, p. 10; Dkt. No. 70-1, p. 12.)  Plaintiff alleges that Defendants failed to turn over accounting information, lease contracts, and keys to the Independent Manager, Defendant Douglas Waterbury engaged in Property Management Responsibilities, Defendant Carol Waterbury exceeded her defined limits of Property Management Responsibilities, Defendant Carol Waterbury failed to timely document exigent circumstances requiring her involvement in property management, Defendant Douglas Waterbury was within 1,000 feet of Carol Waterbury as she did property maintenance, and Defendants performed and supervised other maintenance and repair work at the Subject Premises. (*See* Pltf Memo of Law, p. 11; Dkt. No. 70-1, p. 13.)

Last, Plaintiff alleges that Defendant Douglas Waterbury has continued to enter Subject Properties and intimidate tenants.  (*See* Pltf Memo of Law, p. 13; Dkt. No. 70-1, p. 15.)  Plaintiff alleges that Defendant Douglas Waterbury entered the property located at 99 ½ Ellen St. in Oswego on at least four times, interacted with the tenant and performed maintenance work.  (*See* Pltf Memo of Law, p. 13-14; Dkt. No. 70-1, p. 15-16.)  Plaintiff then utilizes the Independent

Manager to represent that tenants have informed her that Defendant has entered into and performed maintenance work at the Subject Premises in Oswego.  (*See* Pltf Memo of Law, p. 14-15; Dkt. No. 70-1, p. 16-17.)

Due to the above mentioned alleged violations, Plaintiff requested that the Defendants be held in civil contempt, that Defendants be ordered to pay monetary sanctions, and order additional injunctive relief to enforce the terms of the Decree.  (*See* Pltf Memo of Law, p. 16; Dkt. No. 70-1, p. 18.)  To support a finding of civil contempt, Plaintiff alleges that Defendants refused to fully concede control over the Subject Premises, and have instead stayed involved with the management and have not attempted to comply with the Decree.  (*See* Pltf Memo of Law, pp. 17-18; Dkt. No. 70-1, pp. 19-20.)

Plaintiff also requests that the Court order Defendants to pay: (1) a fine equal to any fees paid to RPM to compensate for property management and other payments improperly deducted from rental income by RPM to be deposited into the account of the Independent Manager; (2) $500 per day for everyday that Defendants fail to certify that they have provided all outstanding information, funds, and documents to the Independent Manager; (3) $500 per incident to the United States as a fine for each time that Defendants Carol Waterbury or Douglas Waterbury engaged in Property Management Responsibilities; and (4) $1,000 per incident to the United States as a fine for each time that Defendant Douglas Waterbury enters onto any portion of the Subject Premises.  (*See* Pltf Memo of Law, pp. 20-21; Dkt. No. 70-1, pp. 22-23.)

Last, Plaintiff requests that the Court order additional injunctive relief to effectuate the Decree.  (*See* Pltf Memo of Law, p. 21; Dkt. No. 70-1, p. 23.)  Plaintiff requests that: (1) Defendant Douglas Waterbury be ordered to remain, without exception, a minimum of 1,000 feet away from all Subject Properties throughout the duration of the Decree; (2) require Defendants to provide

periodic reports to the Court certifying their compliance with the Decree's provisions; (3) extend the duration of the Decree by nine months until May 2025; and (4) require the Defendants to provide necessary documentation to the Independent Manager.  (*See* Pltf Memo of Law, pp. 21-24; Dkt. No. 70-1, pp. 23-26.)

## ARGUMENT

### I.    DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT

Before a party can be held in civil contempt for violating an order of the court, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995).  The movant bears the burden of establishing that all three requirements are satisfied. *See Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009).

As to the first requirement, "[a] clear and unambiguous order is one that 'leaves no uncertainty in the minds of those to whom the order is addressed.'" *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142-43 (2d Cir. 2014) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003)).

As to the second requirement, "[i]n the context of civil contempt, clear and convincing evidence is interpreted to mean 'a quantum of proof adequate to demonstrate to a reasonable certainty that a violation has occurred.'" *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

As to the third requirement, "courts examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order." *Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, 2019 U.S. Dist. LEXIS 59786, at *4 (S.D.N.Y. 2019).

Because a contempt order is a "potent weapon" it is "inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Latino Officers Ass'n*, 558 F.3d at 164.

### A.    PLAINTIFF FAILS TO SATISFY ITS BURDEN TO SHOW THAT DOUGLAS WATERBURY ENTERED THE PREMISES OF THE SUBJECT PROPERTIES

Plaintiff alleges that Defendant Douglas Waterbury has continued to enter Subject Properties and intimidate tenants.  (*See* Pltf Memo of Law, p. 13; Dkt. No. 70-1, p. 15.)  Plaintiff alleges that Defendant Douglas Waterbury entered the property located at 99 ½ Ellen St. in Oswego on at least four times, interacted with the tenant and performed maintenance work.  (*See* Pltf Memo of Law, p. 13-14; Dkt. No. 70-1, p. 15-16.) Plaintiff then utilizes the Independent Manager to represent that tenants have informed her that Defendant has entered into and performed maintenance work at the Subject Premises in Oswego.  (*See* Pltf Memo of Law, p. 14-15; Dkt. No. 70-1, p. 16-17.)

During the conference with the Court, Plaintiff was instructed to submit admissible evidence that Defendants have violated the Consent Decree.  Of note, Plaintiff has repeatedly stated to Defendants that it has received numerous complaints of Defendant Douglas Waterbury entering the Subject Properties in violation of the Consent Decree. However, in support of its motion, Plaintiff has identified only two incidents that it supports with admissible evidence. "Evidence that would not be admissible under established federal rules regarding the competency

of evidence at trial may not be considered on a motion for contempt." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 U.S. Dist. LEXIS 221970, at *9 (S.D.N.Y. 2017).

As it pertains to the allegations concerning 99 ½ Ellen Street, both Douglas and Carol Waterbury have denied that allegation under penalty of perjury. Indeed, Mr. Waterbury notes that he has never entered that property since the Consent Decree was executed. Mr. Waterbury has also explicitly denied entering any Subject Property to perform property management since the Consent Decree was executed. Notably, Plaintiff does not offer declarations or affidavits from any of the tenants or individuals that purportedly observed these alleged violations.

Plaintiff also submits a video that purports to show Mr. Waterbury accessing a vehicle in a parking lot adjacent to the property at 71 W. Utica Street. As Mr. Waterbury explains, the parking lot is not on the property at 71 W. Utica Street, but is part of the property of 73 W. Utica Street, a commercial property that is not covered by the Consent Decree. The video does not show Mr. Waterbury entering 71 W. Utica Street. The Consent Decree prevents Mr. Waterbury from entering the premises of the Subject Properties. Mr. Waterbury did not violate the Consent Decree because he did not enter the premises of 71 W. Utica Street and remained on the property of a property that is not covered by the Consent Decree.

Mr. Waterbury also states that he has not entered the premises of any of the Subject Properties since the Consent Decree was executed. In support of its position, Plaintiff has offered uncorroborated hearsay statements via the Declaration of Rebecca Carswell of LOPM. Ms. Carswell provides no specificity as to who made these allegations, when the allegations were made, or how the allegations are conveyed. The unspecific allegations contained in Ms. Carswell's Declaration are impermissible hearsay and should not be considered by this Court. Defendants also note that Defendants have repeatedly requested that Plaintiff specifically identify any and all

allegations concerning Mr. Waterbury improperly entering Subject Properties, as they have repeatedly represented they were in possession with numerous reports. Yet, Plaintiff now only offers these limited allegations, many of which are impermissible and directly refuted by Defendants. Accordingly, Plaintiff has failed to establish its burden to show that Mr. Waterbury has improperly entered the Subject Properties.

### B.    DEFENDANTS HAVE CURED TO THE BEST OF THEIR ABILITY ANY ALLEGED VIOLATIONS OF THE CONSENT DECREE

Defendants have achieved substantial compliance and were diligent and energetic in its compliance efforts. *See, e.g., Latino Officers Ass'n*, 519 F. Supp. 2d at 446 (declining to find the defendants in civil contempt where, despite the "initial failure" of their compliance efforts, they "were reasonably diligent and energetic in attempting to comply . . . and have since brought themselves into substantial compliance with [the order at issue]"); Brown v. Kelly, 2007 U.S. Dist. LEXIS 39527, at *4 (S.D.N.Y. 2007)(finding that the defendants were in compliance where, notwithstanding some isolated instances of noncompliance, "defendants [had] turned their behavior around"); *New York Times Co. v. Newspaper and Mail Deliverers' Union of New York and Vicinity*, 1992 U.S. Dist. LEXIS 6738 (S.D.N.Y. 1992) (applying "substantial compliance" standard).

What is clear from Plaintiff's motion papers is that any time a perceived violation has been brought to Defendants' attention, they have responded and taken all steps necessary to cure the alleged violation, which they are permitted to due under the Consent Decree. Although Plaintiff deems these attempts as superficial, Plaintiff concedes that Defendants have provided Plaintiff with bank statements, financial statements, and other documents that Plaintiff has requested. Defendants have provided LOPM with lease agreements, keys, and security deposits concerning the Subject Properties. Mrs. Waterbury refers tenant or prospective tenant contacts to LOPM.

Plaintiff states that Defendants have failed to provide necessary documentation concerning the Subject Properties at this time, including a failure to turn over all lease agreements related to the Morrisville property and documents that would permit LOPM to complete a financial accounting concerning that property. It is critical to note that Defendants have provided all documents in their possession concerning Morrisville at this time. Further, at no point did LOPM advise Defendants that it was unable to open certain lease agreements, that certain lease agreements were missing pages, or that it was missing lease agreements in their entirety. Rather, Plaintiff brought that to Defense counsel's attention. Notably, Defense counsel asked LOPM's attorney to have his client identify which rental units it believed it was missing lease agreements for and to identify which lease agreements were blank or missing pages in order to allow Defendants to try and cure that issue. Neither LOPM, nor LOPM's attorney, has provided Defendants or their attorneys with this information to date.

The record before the Court shows that at this time, Defendants have made legitimate and substantial attempts to cure any alleged violation of the Consent Decree. Defendants have turned over all documents in their possession concerning the Subject Properties, and believe that they are in compliance with the Consent Decree at this time. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion to Enforce.

## II.    THE COURT SHOULD NOT SANCTION OR FURTHER ENJOIN DEFENDANTS

Upon a finding of civil contempt, sanctions are properly imposed for only two purposes: (1) to coerce future compliance with the court's order; and (2) to compensate the Plaintiff for losses caused by the defendant's past non-compliance. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). It is well settled that civil contempt proceedings must be remedial

and compensatory, and not punitive. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989).

In imposing coercive sanctions, a court has "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982).  The court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Weston Capital Advisors, Inc. v. PT Bank Mutiara, TBK*, 738 Fed. Appx. 19, 22 (2d Cir. 2018) (quoting *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)).

A hallmark of coercive sanctions was that "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'" *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911).  "[A] noncompensatory fine is civil, and thus may ordinarily be imposed in the absence of a criminal trial only if the contemnor is afforded an opportunity to purge." *People v. Operation Rescue Nat'l*, 80 F.3d 64, 68 n. 7 (2d Cir. 1996).

Plaintiff's proposed sanctions are not warranted in this matter, and Defendants respectfully request this Court deny Plaintiff's Motion for Sanctions in its entirety. As discussed above, Defendants have actively attempted to and have largely cured any perceived violations of the Consent Decree. Defendants have requested that LOPM specifically identify and documents or materials that LOPM believes it still requires to manage the properties, but has received no response to this request. This is problematic as Defendants have provided all documents in their possession at this time, yet are alleged to be in continuing violation of the Consent Decree because

LOPM will not provide Defendants with the information necessary to permit Defendants to try and cure the violation. Moreover, the bulk of the alleged current violations concern the Morrisville property.  Mr. Waterbury has a 1% interest in that property via a family trust. At no time has Plaintiff ever set forth allegations that Mr. Waterbury violated Title VIII or the Fair Housing Act related to tenants at the Morrisville property. All allegations of improper conduct concerned Oswego rental properties. As such, the risk of harm of non-compliance concerning the Morrisville properties is low. As Defendants have cured any prior alleged violations, are willing to work to cure any current alleged violations (if provided with the necessary information to do so and to the extent they exist), and the risk of harm concerning the Morrisville property is low, a financial sanction is unnecessary to ensure compliance.

Moreover, sanctions are not warranted as LOPM's management of the Subject Properties has left Defendants in a precarious financial situation.  As Mr. and Mrs. Waterbury note, the vacancy rate in the Subject Properties has skyrocketed, and significant sums of rent appear to be outstanding. Defendants attempted to terminate LOPM as the Independent Manager based on LOPM's actions, or lack thereof, however, Plaintiff denied that request. Indeed, Defendants have now chosen to list the majority of the Subject Properties in an attempt to stave off financial disaster. Defendants' present financial condition, therefore, also weighs against the imposition of sanctions. Further, as Defendants now intend to list and sell the majority of the Subject Properties, including the Morrisville property, it further weighs against the imposition of sanctions as those properties will soon no longer be covered by the Consent Decree.

For these reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Sanctions.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants Douglas Waterbury, Carol Waterbury, E&A Management Co., and Ontario Realty Co. (hereinafter collectively "Defendants") respectfully request that this Court deny Plaintiff's Motion for Compliance and for Sanctions, in its entirety, with prejudice, along with such other and further relief that this Court deems just and proper.

Dated: January 11, 2021 **GOLDBERG SEGALLA, LLP**

By: John P. Coghlan, Esq.
Bar Roll #519328
5786 Widewaters Parkway
Syracuse, New York 13202
Telephone: 315-413-5400
Fax: 315-413-5401
Email: jcoghlan@goldbergsegalla.com