UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                       Plaintiff,

    v.                                            5:18-cv-440 (MAD/TWD)

DOUGLAS WATERBURY, et al.,

                       Defendants.
_____

APPEARANCES:                                       OF COUNSEL:

HON. ANTOINETTE T. BACON                 JOHN D. HOGGAN, JR., ESQ.
Acting United States Attorney                   Assistant United States Attorney
445 Broadway, Room 218
Albany, NY 12207

GOLDBERG SEGALLA, LLP                    SHANNON T. O'CONNOR, ESQ.
Attorneys for Defendants
5786 Widewaters Parkway
Syracuse, NY 13601

**MAE A. D'AGOSTINO,** United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

       The United States of America ("USA" or "Plaintiff") seeks a court order finding Defendants in contempt for their failure to abide by the parties' Consent Decree and Order ("Decree") (Dkt. No. 63), which was so-ordered by the Court on August 9, 2019, and for sanctions related to Defendants' alleged failures. (Dkt. No. 70.) Defendants oppose the motion in all respects. (Dkt. No. 77.) Plaintiff filed a reply. (Dkt. No. 80.) For the following reasons, Plaintiff's motion is granted in part and denied in

part.

## II. BACKGROUND

Plaintiff commenced this action by the filing of a Complaint on April 11, 2018, alleging violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3631. (Dkt. No. 1.) Defendants answered (Dkt. Nos. 14, 15) and discovery commenced. (*See generally* Dkt. No. 19.) Ultimately, the parties settled the matter and, as noted, the Decree was entered on August 9, 2019. Among other restrictions, the Decree enjoined Defendants from managing the subject designated rental properties ("rental properties") (Dkt. No. 63, App'x A, at ¶¶ 1-21[1]) with various directives to accomplish that goal, and also enjoined Defendant Douglas Waterbury from engaging in any direct conduct related to the rental properties. (*See generally* Dkt. No. 63.) In the context of this motion, Plaintiff asserts Defendants Douglas Waterbury and Carol Waterbury violated the following parts of the Decree:

> Decree ¶ 18(d), enjoining Defendants from engaging in intimidating, threatening, or interfering conduct;
>
> Decree ¶ 20, enjoining Defendant Douglas Waterbury from engaging in contact or communications with current or past tenants;
>
> Decree ¶ 21, enjoining Defendants from directly or indirectly engaging in or conducting any Property Management Responsibilities as defined in the Decree[2];

---

[1] Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Page references to documents identified by the CM/ECF docket number refer to the page numbers inserted by the Court's electronic filing system maintained by the Clerk's Office.

[2] The Decree defines Property Management Responsibilities to include: advertising dwelling units for rent; showing or renting housing units; processing rental applications; supervising or performing repairs or maintenance; negotiating rents and security deposits; determining tenant eligibility for subsidies or waivers of fees and rent; determining to whom to rent, whom to evict, and/or whose lease to renew or not renew; inspecting dwelling units; collecting rent and fees; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, direct or indirect personal contact with tenants or prospective tenants; operating, consulting,

>Decree ¶ 22, enjoining Defendant Douglas Waterbury from entering any of the Subject Properties[3];

>Decree ¶ 26, enjoining Defendant Carol Waterbury from performing any Property Management Responsibilities at the Subject Properties, except in limited circumstances specifically provided by the Decree[4];

>Decree ¶ 27, requiring Defendants to hire an Independent Manager that is approved in advance by the United States;

>Decree ¶ 32(a), entrusting the Independent Manager with all Property Management Responsibilities; and

>Decree ¶ 40, prohibiting Defendant Douglas Waterbury from accompanying Defendant Carol Waterbury when she is exercising Property Management Responsibilities and requiring Carol Waterbury to provide written notification of that conduct within five days of learning of any such incident.

(Dkt. No. 70-1 at 5-6.) Plaintiff requests that the Court: (1) find Defendants in contempt; (2) order "Defendants to pay monetary sanctions;" and (3) "order additional injunctive relief to enforce the terms of the Decree." *Id.* at 18.

Defendants claim that Plaintiff has failed to show that Douglas Waterbury entered the subject

---

managing, staffing, participating in, working in (whether paid or unpaid), or otherwise having any involvement in the management, or maintenance of rental dwellings, including but not limited to those owned and/or managed by any Defendant in this action. (Dkt. No. 63 at ¶ 17.)

[3]  This prohibition extends to the entire premises of the Subject Properties, "including, but not limited to the dwelling units (whether occupied or unoccupied), leasing offices, basements, communal spaces, yards, parking areas, [and] garages." (Dkt. No. 63 at ¶ 22.)

[4]  Under the Decree, Carol Waterbury retained the right to manage the Subject Properties during the thirty days following this Court's entry of the Decree. (Dkt. No. 63 at ¶ 31.) The Decree also permits Carol Waterbury to enter a Subject Property in the event of a time-sensitive emergency if the Independent Manager is unavailable and requires her to submit detailed documentation of the incident to the Plaintiff and the Independent Manager. *Id.* at ¶ 33. The Decree also allowed Carol Waterbury to show properties to prospective tenants under certain circumstances during the first six months of the Decree (*i.e.*, until February 9, 2020) but provides that, for the remainder of the Decree's term, "under no circumstances may Defendant Carol Waterbury show subject properties to prospective tenants . . . more than twelve (12) times in any twelve (12)-month period." *Id.* at ¶ 34.

rental properties in violation of the Decree, and that Defendants have cured any other alleged violations of the Decree. (Dkt. No. 77 at 18-21.) Therefore, Defendants assert they should not be found in contempt, sanctioned, or enjoined further. *Id.* at 21-24.

## III. LEGAL STANDARD

"[T]he power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal quotation marks and citation omitted). The underlying concern is "disobedience to the orders of the Judiciary" not "merely the disruption of court proceedings." *Id.* (citation omitted). For a contempt order to issue, the moving party must establish "[b]y clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995) (citation omitted). "More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* (citation omitted).

"Generally, the sanctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past noncompliance." *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) (citations omitted). If found in contempt, monetary sanctions may be awarded to either compensate the moving party for harm resulting from the noncompliance or to deter further disobedience. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) (citations omitted). Courts have "wide discretion" to determine a coercive remedy to ensure future compliance. *Vuitton et Fils S.A.*, 592 F.2d at 130 (citations omitted).

## IV. DISCUSSION

First, Plaintiff notes the Decree is a "clear and unambiguous" order of the Court since its terms

were negotiated by Defendants. (Dkt. No. 70-1 at 18-19.) "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Defendants do not contest the preciseness of the Decree. Indeed, the Decree represents a comprehensive settlement of the parties' claims in this case, including provisions addressing injunctive relief, monetary damages to affected individuals, and civil penalties. (*See generally* Dkt. No. 63.)

Defendants do, however, argue that Plaintiff has not produced "clear and convincing evidence" that the alleged violations occurred. (Dkt. No. 77 at 18-20.) "Clear and convincing evidence means something more than a preponderance of the evidence, and something less than beyond a reasonable doubt. The clear-and-convincing burden of proof requires the government to prove that a factual contention is highly probable." *Blandon v. Barr*, 434 F. Supp. 3d 30, 38 (W.D.N.Y. 2020) (internal quotations and citations omitted). "In the context of civil contempt, the clear and convincing evidence standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation has occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotations and citation omitted).

Lastly, Plaintiff contends that Defendants have not diligently attempted to comply with the Decree and that Defendants "have engaged in a pattern of concealing and denying their noncompliance, and of taking only half-measures to cure their violations when caught." (Dkt. No. 70-1 at 20.) Defendants argue they have diligently taken all legitimate and substantial steps necessary to cure any violations brought to their attention. (Dkt. No. 77 at 20-21.)

### A. Alleged Violations Related to Retaining the Independent Property Manager

Per the Decree, Defendants were required to notify Plaintiff of the proposed "independent

management company or Independent Manager" ("Independent Manager") within 30 days of the entry of the Decree, and the Independent Manager was required to be "a professional property manager or a licensed real estate professional, to whom no Defendant has any financial, personal, or familial connection or interest." (Dkt. No. 63 at ¶¶ 27, 28.) Defendants timely proposed an individual to be the independent property manager; however, the person was not qualified under the terms of the Decree because she was not a professional property manager nor a licensed real estate professional, and she did not have any property management experience. (Dkt. No. 70-1 at 6-7.) Plaintiff objected to this individual under the terms of the Decree. (Dkt. Nos. 63 at ¶ 29; 70-9.) Thereafter, while the Decree was entered on August 9, 2019, a qualified Independent Manager was not proposed until October 14, 2019, and Plaintiff approved that Independent Manager on November 6, 2019, pending approval of the management agreement. (Dkt. Nos. 63 at ¶ 28; 70-11 at 2; 77-2 at 2; 77-11 at ¶ 15.) The management agreement retaining that Independent Manager, Lake Ontario Property Management ("LOPM"), was approved by Plaintiff on December 23, 2019 (Dkt. No. 77-3 at 2-3), executed effective March 3, 2020, but not fully signed by Defendants and LOPM until March 13, 2020. (Dkt. Nos. 70-7 at ¶ 2; 80-1 at ¶ 6.) Defendant Douglas Waterbury asserts he asked for updates from LOPM about finalizing the management agreement at the end of December, 2019. (Dkt. Nos. 77-1 at ¶ 18-22; 77-13 at 2-5.) The text message chain shows both Defendants and LOPM were requesting necessary information from the other and their respective attorneys needed to review the agreement before the management agreement could be finalized. (Dkt. No. 77-13 at 2-5.) Negotiations between Defendants' counsel and LOPM's counsel took place from mid-January through February 2020 before the management agreement was finally executed by all parties on March 13, 2020. (Dkt. No. 80-1 at ¶ 6.)

A review of the parties' submissions as outlined above concerning the retention of the Independent Manager and finalizing of the management agreement show that both parties made relatively diligent attempts to comply with the directives in the Decree regarding retention of the Independent Manager. While Defendants initially proposed a property manager that did not meet the necessary criteria as set forth in the Decree, a suitable management company was ultimately proposed a short time thereafter. Although the management agreement was not finalized until approximately seven months after the Decree was issued, the Court finds Defendants diligently attempted to comply with the directives concerning the engagement of an independent property manager in a reasonable manner and, as such, does not find Defendants in civil contempt on this issue, and sanctions are not warranted regarding any perceived delay in retaining LOPM. *See, e.g., Latino Officers Ass'n v. City of New York*, 519 F. Supp. 2d 438, 446 (S.D.N.Y. 2007), *aff'd* 558 F.3d 159 (2d Cir. 2009) (declining to find the defendants in civil contempt where, despite the "initial failure" of their compliance efforts, they "were reasonably diligent and energetic in attempting to comply . . . and have since brought themselves into substantial compliance with [the order at issue]").

### B.     Alleged Violations Related to Property Management Issues

However, the same cannot be said for the issues regarding the management of the various properties, especially after the management agreement between Defendants and LOPM was fully executed. For the following reasons, the Court finds clear and convincing evidence that Defendants failed to comply with the Decree at the 54-unit apartment building located at 55 East Main Street, Morrisville, New York ("Morrisville property") and at various rental properties in Oswego, New York that were subject to its terms.

In pertinent part, the Decree provides that the Independent Manager, here LOPM, is

"responsible for all Property Management Responsibilities, including using the Manager's name and telephone number for all rental advertisements." (Dkt. No. 63 at ¶ 32(a).) The Decree also clearly provides that Defendant Carol Waterbury could manage any of the subject properties for a thirty-day period after the Decree was entered, or enter a property when there was a time-sensitive emergency for which she must provide documentation thereafter, or enter and show a property if LOPM was unavailable during the first six months after the Decree was entered (*i.e.,* until February 9, 2020) and subject to approval of LOPM for which she must provide documentation thereafter. *Id.* at ¶¶ 31, 33, 34. Under the Decree, Defendants are not allowed to change or substitute the Independent Manager without providing notice to Plaintiff in advance; Plaintiff could object to any such proposed change of property management; Plaintiff could request documentation regarding the reason for the requested change in the Independent Manager; and the Decree provided specific steps to be followed by Defendants in the event of the Independent Manager's resignation. *Id.* at ¶¶ 35, 36, 37, 38. If such an event occurs, Carol Waterbury could manage the properties for thirty days thereafter, but in no event could Douglas Waterbury accompany Carol Waterbury on any such management duties, and under the Decree she is required to provide written notification to Plaintiff of any such property management encounters by Douglas Waterbury. *Id.* at ¶¶ 39, 40.

       1.     **Morrisville Property**

Clear and competent record evidence shows that well after the Decree was entered and LOPM became the approved property manager, Defendants did not relinquish control of the Morrisville property as directed by the terms of the Decree. (*See generally* Dkt. No. 63; *see also* Dkt. No. 63, App'x A, at ¶ 18.) On July 16, 2020, web pages for Romano Property Management ("RPM") advertised the Morrisville property. (Dkt. Nos. 70-8 at ¶ 4; 70-16 at 3.) RPM was not the approved

independent property manager under the Decree.

On July 27, 2020, a compliance property tester contacted the designated telephone number of (315) 684-7100 advertised for the Morrisville property which was a telephone number associated with Defendant Ontario Realty, Inc. ("Ontario Realty number").[5] (Dkt. No. 70-2.) The tester reached an agent at RPM. *Id.* at ¶¶ 4, 5, 6. The agent then took steps to send a rental application to the tester. *Id.* at ¶¶ 7, 8, 9.

On August 5, 2020, a contractor for Plaintiff visited the Morrisville property and noted a sign on the property designating the contact telephone number for rental information as the Ontario Realty number. (Dkt. Nos. 70-5; 70-17 at 2.) Notably, the sign also contains the name "Romano" and an additional contact telephone number of (315) 802-6212 ("Romano number"). (Dkt. No. 70-17 at 2.)

On August 25, 2020, web pages advertising the Morrisville property also contained the same Ontario Realty number. (Dkt. Nos. 70-4, 70-26, 70-27.)

On September 10, 2020, another tester called the Romano number, which was answered as "Romano Property Management" and the individual at RPM proceeded to discuss rental arrangements with the tester for an apartment located at the Morrisville property. (Dkt. Nos. 70-6 at ¶ 9; 70-19 at 3-12.)

Rebecca Carswell ("Carswell") of LOPM declared that as of August 26, 2020, she observed individuals working on maintenance issues at the Morrisville property of which LOPM had no knowledge and whom LOPM did not engage. (Dkt. No. 70-7 at ¶ 18.) She also indicated she was not able to get keys to the Morrisville property until November 6, 2020, nor was she able to obtain a list of

---

[5] The parties agreed in the Decree that Plaintiff "may take steps to monitor the Defendants' compliance with this Consent Decree . . . ." (Dkt. No. 63 at ¶ 42.)

9

the current tenants of the Morrisville property as of August 2020.  *Id.* at ¶¶ 19, 20, 22.  In August of 2020, Carswell also observed a sign posted at the Morrisville property advising tenants to call "Bill" or "Dee" for maintenance assistance, although these individuals were not engaged by LOPM.  *Id.* at ¶ 16-21; Dkt. No. 70-23 at 2.  LOPM did not obtain rental income, leases, or information about the Morrisville property until September 21, 2020, which ultimately came from RPM, despite repeated efforts as the designated Independent Manager under the Decree to obtain that information from Defendants.  (Dkt. No. 70-7 at ¶ at ¶¶ 23-25.)  Defendants did not provide a full accounting for the Morrisville property from the time the management agreement was in force as of March 3, 2020, through August 2020; no rental income had been received directly from tenants of the Morrisville property as of December 2020; security deposits were not received by LOPM; and leases for the Morrisville property apartments were blank or provided no information including a lack of mailing addresses for the tenants.  *Id.* at ¶¶ 28-32.

Douglas Waterbury acknowledged that RPM "was assisting in the management" of the Morrisville property in July of 2020.  (Dkt. No. 77-11 at ¶¶ 64-65.)  As noted above, RPM was not the approved Independent Manager under the Decree.  He also declared that it was not until October 1, 2020, when LOPM was provided detailed information from RPM about rental income, security deposits, and expenses regarding the Morrisville property.  *Id.* at ¶ 70.  Defendants' submissions also show lease agreements for the Morrisville property were not initially provided to LOPM's counsel until September 21, 2020.  (Dkt. No. 77-19.)

Kevin C. Caraccioli, Esq. ("Caraccioli"), attorney for LOPM, confirmed Defendants were turning over leases, security deposits, and rental income to LOPM regarding the Morrisville property well into September 2020.  (Dkt. Nos. 80-1 at ¶ 19; 80-9.)  This information demonstrates that RPM

10

was directly involved in the management of the Morrisville property throughout 2020 well after LOPM was designated the Independent Manager under the Decree. *Id.* Further documentation from Defendants regarding the Morrisville property show Carol Waterbury signed a lease on behalf of Defendants in July 2020. (Dkt. No. 80-10 at 2.) Documentation from Defendants for the Morrisville property continued to be received by LOPM from RPM into October 2020. (Dkt. Nos. 80-1 at ¶ 20; 70-25.) The documentation that has been received about the Morrisville property is incomplete regarding expenses incurred, exactly which tenants paid rent and security deposits, in what amounts they paid, and for what periods of time the payments covered. (Dkt. No. 80-1 at ¶ 21.)

The record evidence is clear and convincing, and it adequately demonstrates to a reasonable certainty that Defendants were in violation of the Decree regarding the Morrisville property from the time the management agreement was entered into in March of 2020 until at best October of 2020 and they did not diligently attempt to comply with the Decree. *See King*, 65 F.3d at 1058. Therefore, the Court finds Defendants in contempt for their refusal to cede control over the Morrisville property for at least seven months after the management agreement was in place. To deter further disobedience, the Court finds a sanction of one thousand dollars ($1,000.00) per month of non-compliance for a total of seven thousand dollars ($7,000.00) payable to Plaintiff to be appropriate under the circumstances. Defendants shall also provide to Plaintiff a complete and detailed accounting, sworn to by Defendants Douglas and Carol Waterbury, of all leases, rental income, security deposits, and expenses related to the Morrisville property from March 3, 2020, to the date of this Decision and Order.

### 2. Oswego Properties

The clear and convincing evidence submitted to the Court also shows that Defendants continued to remain involved in the management of various Oswego properties in violation of the

Decree after the independent management agreement was in effect as of March 3, 2020.  An unnamed tenant[6] who rented Defendants' property at 99 ½ Ellen Street, Oswego, New York ("Ellen Street property") declares that Carol Waterbury showed her properties to rent in Oswego in late March/early April 2020, and ultimately rented her the Ellen Street property signing a lease with Carol Waterbury on May 1, 2020.  (Dkt. No. 70-3 at ¶¶ 2-5.)  LOPM had no knowledge of this transaction.  (*See* Dkt. No. 70-7 at ¶ 5.)

Carswell declared that Defendants collected a security deposit for a property at 163 W. Bridge Street in Oswego.  *Id.* at ¶ 6.  On September 16, 2020, Carswell observed workers that she did not hire performing repair work at 176 W. Fifth Street in Oswego.  *Id.* at ¶ 7.  Carswell also stated her attorney contacted Defendants at least nine times in an effort to get Defendants to stop property management activities and provide all information needed to manage the properties.  *Id.* at ¶ 10.

Another unnamed tenant who rented a property located at 174 W. Seneca Street in Oswego declared that in June of 2020, Carol Waterbury was involved in text communications with him and his roommate about the return of their security deposit.  (Dkt. No. 80-17 at ¶ 11.)

Carol Waterbury acknowledged she continued performing responsibilities regarding rental properties through at least June of 2020, but indicates LOPM was aware of her involvement.  (Dkt. No. 77-16 at ¶¶ 9, 10.)  However, she does not indicate she provided any written report of her involvement to LOPM as required under the Decree, nor does she submit any proof of such written notice.  (*See* Dkt. No. 63 at ¶ 33.)  Without giving any specific examples or details, nor submitting any tenant declarations to support her assertions, Carol Waterbury declared that LOPM was not responsive to

---

[6]   After reviewing relevant documents in camera, the Court permitted certain exhibits submitted in support of the Plaintiff's within motion to be filed under seal and/or redacted to protect the identities of innocent non-parties. (Dkt. Nos. 71, 74, 81, 82.)

tenants. (Dkt. No. 77-16 at ¶¶ 18020.) Without direct proof, the Court does not find these claims persuasive and therefore are insufficient to show that Carol Waterbury diligently attempted to comply with the terms of the decree in a reasonable manner. *See Perez v. Danbury Hosp.*, 347 F.3d 419, 423-24 (2d Cir. 2003) (quoting *King*, 65 F.3d at 1058).

Beyond the examples detailed above, Plaintiff has submitted other illustrations of interference or continued involvement by Defendants Carol and/or Douglas Waterbury in the management of properties located in Oswego, New York. However, the examples set forth above are provided directly through the respective declarant's observations and/or exhibits submitted on the motion. These instances clearly demonstrate to a reasonable certainty that Defendants were in violation of the Decree regarding the specifically identified Oswego properties at least three times from the time the independent management agreement was entered into on March 3, 2020, until at least September 16, 2020. Therefore, the Court finds Defendants in contempt for their continued violations of the Decree, and finds a sanction of one thousand dollars ($1,000.00) for each illustrated violation for a total of three thousand dollars ($3,000.00) to be appropriate. These specific examples of violations are supported by competent evidence regarding the Oswego properties located on Ellen Street, West Fifth Street, and West Seneca Street as detailed above. Defendants shall also provide to Plaintiff a complete and detailed accounting, sworn to by Defendants Carol and Douglas Waterbury, of all leases, rental income, security deposits, and expenses related to all of the Oswego properties, (*see* Dkt. No. 63, App'x A), from March 3, 2020 through the date of this Decision and Order.

**C.     Alleged Violations Related to Defendant Douglas Waterbury's Conduct**

Most troubling to the Court is the clear and convincing evidence submitted by Plaintiff of Douglas Waterbury's conduct regarding his presence at various Oswego properties after the Decree

(Dkt. No. 63) was issued by the Court on August 9, 2019. Under the clear and unambiguous terms of the Decree, Douglas Waterbury was enjoined from having any contact with tenants of the subject properties. (Dkt. No. 63 at ¶ 20.) He was prohibited from directly or indirectly engaging in any property management responsibilities (other than communication with the Independent Manager); and he could not enter any of the properties. *Id.* at ¶ 22. In this context, properties included "dwelling units (whether occupied or unoccupied), leasing offices, basements, communal spaces, yards, parking areas, garages, and any rental dwelling for which he has or acquires any direct or indirect ownership interest, financial interest, or control interest." *Id.*

The tenant of the Ellen Street property observed Douglas Waterbury exit the unit in April of 2020 when she went to view it. (Dkt. No. 70-3 at ¶ 4.) When the water heater broke over Memorial Day weekend in May of 2020,[7] the tenant notified Carol Waterbury and thereafter Douglas Waterbury presented himself at the front door of the unit, then apparently inspected the water heater before informing the tenant that it would "take some time to fix the issue because of the holiday weekend." *Id.* at ¶ 6. The tenant also observed Douglas Waterbury at the Ellen Street property on two other unknown dates in the summer of 2020 after the Memorial Day weekend. *Id.* at ¶¶ 7, 8. The tenant reported these encounters to the City of Oswego Police on September 10, 2020. (Dkt. No. 70-35 at 2.)

On May 16, 2020, Caraccioli directly observed Douglas Waterbury entering property located at 60 W. Bridge Street, Oswego, New York. (Dkt. Nos. 80-1 at ¶ 15; 80-4.) On June 14, 2020, Caraccioli observed Douglas Waterbury exiting property located at 56 W. Bridge Street, Oswego, New York. (Dkt. Nos. 80-1 at ¶ 16; 80-5; 80-6.)

---

[7] The Court takes judicial notice of the 2020 calendar which shows the Memorial Day observance occurred on May 25, 2020.

On October 29, 2020, Douglas Waterbury was observed by two tenants at 71 W. Utica Street, Oswego, New York, jump starting a vehicle in the adjacent parking area. (Dkt. Nos. 80-14 at ¶ 7; 80-16 at ¶ 4; 70-36.) The tenants declared they were explicitly given permission by Carol Waterbury to use the parking area where Douglas Waterbury was observed; the lease provided for the off-street parking; and they parked in the lot where Douglas Waterbury was observed regularly during the tenancy and were never told by Defendants or anyone on their behalf that they could not park there. (Dkt. Nos. 80-14 at ¶¶ 10-12; 80-16 at ¶¶ 5-6.) Defendant Douglas Waterbury claims the subject parking area was not covered by the Decree, and that he was not there on October 29, 2020, in any event. (Dkt. No.77-11 at 47-55.) Nevertheless, he acknowledged he was present at the adjacent parking area in November 2020, but that he did not enter the premises of 71 W. Utica Street. *Id.* at ¶ 52-55. However, in the context of the property at 71 W. Utica Street, the Court finds the Decree clearly prohibits Douglas Waterbury from entering any of the properties including the parking areas which here contained the area where Douglas Waterbury was observed; and he admitted he was present there after the effective date of the Decree. (*See* Dkt. Nos. 63 at ¶ 22; 80-14 at ¶¶ 10-12; 80-16 at ¶¶ 5-6.)

Regarding the property at 174 W. Seneca Street, Oswego, New York, a tenant of that property declared Douglas Waterbury "showed up at my door with a toolkit" in July of 2019 indicating he was there to fix a washing machine. (Dkt. No. 80-17 at ¶ 6.) The tenant did not let him into the unit. *Id.* Douglas Waterbury states he did not enter the subject property at any time "after" the Decree was executed to fix a washing machine, but he does not comment on whether he was at the front door of the property in the weeks leading up to the entry of the Decree. (Dkt. No. 77-11 at ¶¶ 43-44.) Regardless of this conflicting information between the tenant and Douglas Waterbury, if the incident

15

indeed occurred it predates the Decree which was entered on August 9, 2019.  However, the tenant also declared Douglas Waterbury plowed the driveway of the property at 174 W. Seneca Street "regularly" from December 2019 until April 2020.  (Dkt. No. 80-17 at ¶ 7.)  The tenant also indicated Douglas Waterbury drove by the property nearly every day beginning in mid-March 2020 through May 2020 and sometimes parked there; he was observed taking photographs of the unit in late April or early May 2020; and the tenant felt "very uncomfortable" by these behaviors.  *Id.* at ¶¶ 8-10.  Douglas Waterbury denied that he plowed the subject driveway after the Decree was entered, and stated he only took photographs of the property for insurance purposes.  (Dkt. No. 77-11 at ¶¶ 41, 56-57.)  He did not comment on whether he continually drove by the property beginning in mid-March of 2020.

Considering all of this information, the Court finds clear and convincing evidence that Douglas Waterbury violated the Decree by his presence at the above-referenced Oswego properties on multiple dates, especially since the prohibitions in the Decree clearly included the dwelling units, yards, garages, and driveways.  In light of the clear prohibitions established by the Decree and Douglas Waterbury's willful violations, Plaintiff has shown with reasonable certainty that Douglas Waterbury did not diligently attempt to comply with the Decree.  Therefore, the Court finds him in contempt for violating the Decree.  The Court sanctions Defendant Douglas Waterbury in an amount of one thousand dollars ($1,000.00) for each of the five Oswego properties referenced (Ellen Street, 60 West Bridge Street, 56 West Bridge Street, 71 West Utica Street, and 174 West Seneca Street) for a total of five thousand dollars ($5,000.00) payable to Plaintiff to serve as a deterrent to any further misconduct on his part.

V.      **CONCLUSION**

For the foregoing reasons, Defendants will be held in contempt due to their willful violations of

the Decree entered into on August 9, 2019. The Decree clearly directed Defendants were to turn over management of all properties including those in Morrisville and Oswego, New York to the Independent Manager which they did not diligently attempt to do after the Decree was entered. The Decree also clearly prohibited Defendant Douglas Waterbury from having any involvement in the properties or with the tenants and he did not diligently attempt to comply. Rather, the clear and convincing evidence shows he simply disregarded the directives of the Decree on multiple occasions. Sanctions shall be imposed as indicated above and Defendants shall provide all necessary documentation to the Independent Manager as directed. The Court declines at this time to order any additional injunctive relief or other sanctions as requested by Plaintiff.

Accordingly, it is hereby

**ORDERED** that the Plaintiff's Motion for Contempt and Sanctions (Dkt. No. 70) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendants are held in contempt for violating the Decree; and it is further

**ORDERED** that Defendants are sanctioned and ordered to pay Plaintiff a total sum of fifteen thousand dollars ($15,000.00) as directed herein to Plaintiff no later than thirty (30) days from the date of entry of this Decision and Order; and it is further

**ORDERED** that Defendants shall provide to Plaintiff no later than thirty (30) days from the date of entry of this order a complete and detailed accounting, sworn to by Defendants Carol and Douglas Waterbury, of all leases, rental income, security deposits, and expenses related to all of the Morrisville and Oswego, New York properties, (Dkt. No. 63, App'x A), from March 3, 2020, through the date of this Decision and Order; and it is further

**ORDERED** that Defendants cease performing any property management responsibilities at the

Morrisville and Oswego properties, (Dkt. No. 63, App'x A), including but not limited to collecting rent and security deposits and executing leases; Defendants must refer all tenants and applicants to the Independent Manager; and Defendants must cease interfering with the Independent Manager; and it is further

    **ORDERED** that Plaintiff's Motion is **DENIED** in all other respects including issuing any further injunctive relief at this time.

**IT IS SO ORDERED.**

Dated: September 22, 2021
       Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge